### SILAS H. BURNHAM *vs.* GRAND TRUNK RAILWAY COMPANY.

*How far corporation is bound by ticket agent's statements.*

The defendants' ticket agent represented to the plaintiff that it was necessary to purchase but one ticket to enable him to pass over the road, stopping over one night at an intermediate station, and that the conductor would give a stop-over check, to enable him to do so. At the time these representations were made, and in consequence of them, the plaintiff having informed the agent of his desire to stop over, purchased the ticket, paying the fare demanded for the whole distance. On the second day his ticket was refused by the conductor, upon the ground that it was indorsed "good for this day only," and the plaintiff, refusing to pay the fare demanded, was expelled from the cars. *Held,* that in an action against the company such representations of the ticket agent were admissible in evidence; and that the conductor, having been informed of these representations, was not authorized to expel the plaintiff from the train, without first offering to return the excess of fare paid or to deduct it from the fare demanded, though the rules of the company prohibited passengers from stopping over upon such tickets.

ON EXCEPTIONS.

Upon the sixteenth day of February, 1871, the plaintiff, then a student of Dartmouth College, left his home in Norway to return to Hanover, purposing to take the train that day at South Paris station, upon the defendants' railroad, go to Gorham, N. H. that night and thence to Northumberland and Lancaster the next day.

He asked the ticket seller and station agent at South Paris whether he should buy one ticket through from there to Northumberland, and stop over with it, or buy one to Gorham and another thence to Northumberland. He was told to buy one ticket and that the conductor would give him a stop-over check, as it had for some time been the custom to do. He accordingly did so. On presenting the ticket in the cars the conductor of that train told him the issue of stop-over checks had very recently been forbidden, but that he would doubtless be allowed to continue his journey upon that ticket the next day, under the circumstances. He left that train at Gorham, where he passed the night. Mr. Goold, the conductor of the train upon which he resumed his journey the next day, at first took his ticket, but having discovered that it bore date of a preceding day, a few minutes later came and threw it back to the plaintiff, telling him to take it and pay his fare over again or else to get off the train, and do it lively. Mr. Burnham related his conversation with the ticket seller at the time of the purchase, but Mr. Goold said it was no use arguing the matter ; the plaintiff must pay his fare or get off the train at West Milan, at which station they arrived during this discussion. As the plaintiff declined either to pay or leave the train, the brakemen were directed to remove him and a fellow-student who had bought a similar ticket at the same time and place, and under similar assurances, and they were compelled to quit the cars by threats of forcible removal if they remained. As the train started, Mr. Burnham got on again, but the train was stopped forty or fifty rods or more from the station and he left it. He said he left the second time upon compulsion, while Mr. Goold deposed that the train was stopped at Burnham's request, to permit him to get off, because he did not wish to proceed without his comrade. The ticket bore upon its face its date, February 16, 1871, its number, the name of the company, the stations between which it entitled the holder to ride, in a "first class" carriage, and the words "good for this day only," but was authenticated by no signature, and contained nothing beyond what is above stated. The defendants objected

to the admission of the conversations between the plaintiff and the ticket agent and with the first conductor, but they were admitted. The court was requested to tell the jury that a contract, or rule, that tickets shall be good only for the day of their issue, and entitle the holder to a ride only on that day, is reasonable and will not entitle the holder to a passage upon any other day ; that, if offered upon a day different from its date, the conductor was authorized to reject it, demand fare, and, in case of non-payment, to expel the holder from the cars at any station, in a reasonable manner ; that upon the law and the evidence, the defendants were not liable ; that, at least, the corporation were not liable for punitive damages, nor for any sustained by the second removal ; which instructions were not given, but the jury were told that the plaintiff was entitled to recover for the first removal, being then rightfully upon the train, but that he was not rightfully there the second time. The question of damages alone was left to the jury who were directed not to award damages unless they found the expulsion to have been willful, wanton and insulting, and not an honest attempt to discharge official duty in obedience to orders. The verdict was for $450, which the defendants moved to set aside as excessive, and filed exceptions to the instructions given and refused.

*J. & E. M. Rand,* for the defendants.

The ticket was a contract for a passage from South Paris to Northumberland on the sixteenth day of February, 1871, and not for one from Gorham to Northumberland on the seventeenth of that month ; a contract which the parties might lawfully thus make and limit. 1 Redfield on Railways, 99, 100, &c. ; *Cheney* v. *B. & M. R. R.,* 11 Metc., 121 ; *B. & L. R. R. Co.* v. *Proctor,* 1 Allen, 267 ; *Beebe* v. *Ayers,* 28 Barb., 275.

*A. A. Strout* and *Geo. A. Wilson,* for the plaintiff.

The ticket does not express the contract. *Sears* v. *Eastern R. R. Co.,* 14 Allen, 436. The contract was verbal.

DANFORTH, J. In this case there is no conflict of testimony, so far as it relates to the liability of the defendants; no facts in relation to this point for the jury to pass upon. The instruction was that the action could be maintained, leaving only the question of damages to the jury. If this was correct, the defendants have no cause of complaint for the refusal of the requests for certain instructions made by them. On the sixteenth of February, 1871, the plaintiff purchased of the defendants' station agent at South Paris, a ticket entitling him to a passage from that place to Northumberland. Upon the ticket was indorsed the date and "good for this day only." In the absence of other testimony, this would have been proof of a contract for a passage on the train that went through on that day. But the plaintiff stopped at Gorham, an intermediate station, and the next morning got upon the cars to complete his journey, claiming the right to do so by virtue of the ticket purchased the day before, and refused, upon demand of the conductor, to pay any further fare, whereupon he was expelled from the cars. This expulsion is now justified on the ground that the ticket is the only admissible evidence of the contract between the parties, and is therefore conclusive upon that point.

But it is seldom, if ever, that the ticket embodies all the elements of the contract. The running of the trains as well as all reasonable rules prescribing the manner and facilitating the business of carrying passengers, certainly so far as known, become a part of the contract, and may be proved by either party, though not indorsed upon the ticket. *Sears* v. *Eastern R. R. Co.*, 14 Allen, 433. In the case at bar the enquiry presented is—what is the contract? Not whether the rule of the company, or the contract expressed by the ticket, is reasonable. No objection is made to the authority of the company to make such a rule or contract. But did the plaintiff have such a knowledge of the rule as to make it binding upon him, or did he in any way assent to it as a part of the contract for his passage from South Paris to Northumberland. As either party may prove terms of the contract, not expressed upon the ticket, so either party may prove the accept-

ance, or rejection, or waiver of any terms thereon indorsed. The ticket is not a written contract signed by the parties. It is, at most, evidence of some existing contract for a passage between two places named, and that the holder has paid the fare demanded.

Upon the plaintiff's ticket we find the indorsement "good for this day only." The fact that he accepted and produced it as proof of his right to a passage would certainly be *prima facie* evidence of his right to a passage on the day of its date alone, and possibly he would not be permitted to deny that he was bound by that indorsement, unless he could show that his assent had been withheld with the knowledge and consent of the company. This he attempts to do, by showing just what contract was made with the ticket agent at South Paris. But it is said this agent had no authority to change any of the rules of the company and, therefore, his acts or statements upon this point are not admissible. It may be conceded that this, or any other agent, had no authority to change or abrogate any rule established by the company, but the consequences claimed will by no means follow. He was placed there for the purpose of selling tickets, and it may be admitted, such tickets as will secure a passage in accordance with the rules of the company. The plaintiff desired to purchase just such a ticket. He was ignorant of the rules of the company, but wished to go over a portion of the road one day and another portion the next day. The rules make a part of the contract. It seems that before this the conductor had been permitted to give "stop-over checks." This custom had been abrogated but a few days previous, of which, so far as appears, no notice had been given. This is the very point upon which the plaintiff desires information. To whom shall he go to obtain it ? To whom can he go but to the person appointed by the company for the purpose of giving such information, and selling the proper tickets? To that person he does go, and is informed that the custom of giving stop-over checks still continues, and that it is necessary to purchase but one ticket. Relying upon this information, as he was justified in doing, he

Burnham v. G. T. Ry. Co.

purchased his ticket and paid the fare demanded for the whole distance.

The real contract between the plaintiff and the ticket agent was made before the ticket was seen. The plaintiff paid his money upon the statement of the agent, and not upon any indorsement upon the ticket. He took the ticket, not as expressing a contract, but as proof of the contract he had already made with the agent. He had neither seen nor assented to the indorsement, nor was he asked to assent to it. As between the plaintiff and agent the contract was definite, with no misunderstanding or suggestion of it.

Under that contract the plaintiff commences his journey, and on the first day asked for his "stop-over check" and is informed by the conductor, not that his ticket is not sufficient, or in any way different from those previously issued, but that his orders were not to give out any more "stop-over checks." Still he was permitted to retain his ticket, encouraged to expect that he would be permitted to complete his passage according to his understanding of the contract. On the next day, however, his ticket was refused and, upon demand being made, he refused to pay a second fare, whereupon he was expelled from the cars.

The conductor acted in obedience to orders from his superiors; the plaintiff, in obedience to information he had received from the ticket agent and upon which he had paid his money; surely, then, he was not in the wrong. But it is said the company were not bound by the contracts of the agent. Admit it. The conductor had proof from the ticket that the fare had been paid for the whole distance and from the statements of the plaintiff, which he had no reason to doubt, and which were confirmed by the custom so lately abrogated, that he had paid it upon the representations of the agent, that the ticket would carry him through. If, under these circumstances, the company, through the conductor, would repudiate or deny the contract, the least they could do would be to pay back the surplus money that they had received, or deduct it from the fare claimed, neither of which was done, or offered to be done, and this they were legally bound to do before refusing to execute

the contract made by their agent, even if they were not bound by it. *Cheney* v. *B. & M. R. R. Co.*, 11 Metc., 121; 1 Redfield on Railways, 100, note. *Exceptions and motion overruled.*

WALTON, DICKERSON and BARROWS, JJ., concurred.

APPLETON, C. J., did not concur.

VIRGIN, J., having been of counsel, did not sit.