THE TOLEDO, WABASH AND WESTERN R. W. CO. v. WRIGHT.

RAILROADS.—*Non-Payment of Fare by Passenger.—Statute Construed.*—Section 28 of the general law of this State for the incorporation of railroad companies, 1 R. S 1876, p. 709, which provides that, "If any passenger shall refuse to pay his fare or toll, the conductor of the train, and the servants of the corporation may put him out of the cars at any usual stopping place," is permissive and not prohibitory.

SAME.—*Discrimination between Price of Ticket and Fare on Train.—Where Passenger may be put off Train.—Trespass.*—A railroad company has the legal right to discriminate between the amounts of fare where a ticket is purchased, and where the fare is paid upon the train, and to demand and receive a larger fare, in the latter case, than the price charged for a ticket; and, when a passenger refuses to pay the fare demanded, the conductor of a train has the right to put such passenger off his train, at any time and

at any place on the line of the road, without reference to stations and without actual danger to his life or person. When he refuses to pay his fare, the passenger becomes an intruder and trespasser, and he has only the rights of a trespasser.

SAME.—*Failure to Purchase Ticket or Ascertain Rules of Company.*—Where a passenger, having time to do so, fails to purchase a ticket, or to ascertain the rules of the railroad company in regard to the payment of fare on the train, and the conductor demands of him more than what he supposes is the regular fare, he should pay the money and investigate the matter afterward; and, upon his refusal so to do, the conductor may eject him from the train.

SAME.—*Excessive Damages.*—As to excessive damages, see opinion.

CHANGE OF VENUE.—*Punishment for Failure to Perfect.—Practice.*—Under section 208 of the practice act, 2 R. S. 1876, p. 119, the applicant for a change of venue, who fails to perfect the same as provided in said section, can not be punished for such failure in any other mode or to any greater extent than that said applicant shall pay all the costs made in the case up to the time of such failure.

SAME.—*Jurisdiction.*—From the time the papers in a case are filed in the court to which a change of venue is taken, whether such papers are filed within the time allowed by the order granting the change of venue or not, such court alone has jurisdiction of the action and of all motions proper to be made therein.

From the Huntington Circuit Court.

*W. Z. Stuart, C. B. Stuart* and *T. A. Stuart,* for appellant.

*W. H. Trammel,* for appellee.

HOWK, C. J.—This was a suit by the appellee against the appellant, as a common carrier of passengers over its railroad, for hire, to recover damages for certain alleged breaches of its duty, as such common carrier. There were three paragraphs in the appellee's complaint, in each of which there was a general statement that at the date mentioned, and between the places named therein, the appellant was such common carrier of passengers for hire over its line of railway.

In the first paragraph of his complaint, the appellee alleged, in substance, that, on the 21st day of August, 1873, he entered one of the appellant's passenger cars, at

the town of Lagro, in Wabash county, for the purpose of being carried by the appellant in said car, as a passenger, from the said town of Lagro to the town of Huntington, in Huntington county, Indiana; that the appellant, " without any lawful cause, indignantly, insultingly, cunningly and maliciously, and purposely, extorted a greater amount of money " from the appellee, as a passenger, than was the usual and customary fare of passengers between the above named places, charged by the appellant, to the appellee's damage in the sum of one hundred dollars. Wherefore, etc.

In the second paragraph of his complaint, the appellee further alleged, in substance, that, on or about the 27th day of August, 1873, he took passage upon one of the appellant's cars, at the town of Wabash, for the purpose of being carried by the appellant in said car from said town of Wabash to the said town of Lagro, as a passenger on said railroad ; that the appellant " unlawfully, cunningly and maliciously, and. purposely extorted " from the appellee a greater amount of money than was the usual and customary fare of the appellant for the carrying of passengers between the above named places, to the appellee's damage in the sum of one hundred dollars. Wherefore, etc.

In the third paragraph of his complaint, the appellee alleged, in substance, that, on or about the 28th day of August, 1873, the appellee entered into one of the appellant's passenger cars, at the town of Antioch, for the purpose of being carried in said car, by the appellant, from said town of Antioch to said town of Lagro ; that he so entered, with the appellant's knowledge and assent, for the purpose aforesaid, and then and there became and was a passenger on board the appellant's car; that, after the appellant had carried the appellee, as such passenger, about two miles, in said car, upon its railroad, towards said town of Lagro, the appellant, without any lawful cause, with

The Toledo, Wabash and Western R. W. Co. v. Wright.

force and violence, at a point other than a usual stopping place for the appellant, and not near any dwelling-house, ejected and turned the appellant out of and from said car, and then and there insultingly refused to carry him further, to the appellee's damage in the sum of forty-eight hundred dollars. Wherefore, etc.

To the appellee's complaint the appellants answered in two paragraphs, in substance, as follows:

1. A general denial; and,

2. That, for a long time, the appellant had established a passenger tariff rate between stations along the line of its road from the Ohio State line west, to the Illinois State line, including the stations in Wabash and Huntington counties; that the regular fare from Lagro to Antioch, on the line of the appellant's road, each way, was forty cents; that, as a premium and inducement to pay at its station offices, the appellant discounted ten cents on every ticket purchased at such ticket office; that it had an obvious policy in so doing, to put a check on those who handled passenger fare on the train; that, on and at the times mentioned in the complaint, the appellee entered the cars at Antioch, with the avowed purpose of riding therein to Lagro, and, when called upon for his fare, tendered thirty cents and positively refused to pay any more; that he entered the cars with the avowed purpose, expressed at the time and while on the cars and at sundry other times, of testing the question of the appellant's right to charge and take on the cars the regular fare of forty cents between the said points; and that the appellee refusing, in a boisterous and insolent manner, to pay the said regular and established fare, and creating a disturbance of the other peaceful and well behaved passengers, the appellant's conductor stopped the train and put the appellee out, as, on account of his said conduct, the conductor had a right to do. Wherefore, etc.

Before the filing of this answer, the appellant offered in

writing to confess a judgment in favor of the appellee for the sum of twenty-five dollars, in full of all damages by reason of the alleged wrongs stated in his complaint.

The appellee replied by a general denial to the second paragraph of appellant's answer.

At the October term, 1873, of the court below, upon the appellant's application, supported by affidavit, the venue of this action was changed to Grant county, Indiana; and it was ordered by the court, that the clerk thereof should make out a complete transcript of the proceedings in said cause, and, upon the payment of his fees therefor, transmit the same, with all the papers in this case, to the clerk of the Grant Circuit Court, and seven days were given to perfect said change.

Afterward, at the December term, 1873, of the Huntington Circuit Court, the appellee appeared and moved the court in writing, duly verified, to order the clerk of the Grant Circuit Court to return the papers in this case to the court below, to be there docketed and stand for trial, etc. This motion was sustained by the Huntington Circuit Court, and an order made accordingly, requiring the clerk of the Grant Circuit Court to return the papers in said cause, etc., to all of which the appellant excepted.

The issues joined were tried by a jury, and a general verdict was returned for the appellee, assessing his damages in the sum of five hundred dollars. The appellant's motion for a new trial was overruled, and its exception was duly entered to this ruling; and the court rendered judgment for the appellee upon the general verdict of the jury.

The principal error, properly assigned by the appellant, in this court, is the decision of the circuit court in overruling its motion for a new trial. In this motion there were many causes assigned for such new trial, consisting chiefly of alleged errors of law occurring at the trial, and excepted to, in the admission of improper evidence, and

The Toledo, Wabash and Western R. W. Co. *v.* Wright.

in the instructions given the jury of the court's own motion and at appellee's request, and in refusing to give instructions asked for by the appellant. The appellant's counsel complain in argument, in this court, for the most part, of the instructions given the jury, and of the refusal of the court to give the instructions requested by the appellant.

Before considering any question arising on the instructions given or refused, we may properly give a brief statement of the case made by the evidence. The appellee was a witness on the trial in his own behalf, and we give the substance of · his evidence, as follows: About the 21st day of August, 1873, he got on the appellant's cars at Lagro to go to Huntington, and paid his fare on the train to the conductor, who charged him 65 cents for the trip, which was 10 cents more than what he, the appellee, thought was the usual fare between those places. On the 27th day of August, 1873, he got on the appellant's cars at Wabash to go to Lagro, and paid his fare on the train to the conductor, who charged him thirty-five cents for the trip, or ten cents more than he had ever paid between those places; and, although he had frequently rode on the appellant's road between those points, sometimes with and sometimes without tickets, he had always paid the same fare, to wit, twenty-five cents. On the evening of August 28th, 1873, he got on the appellant's cars at Antioch, to go from that place to Lagro; and "when the conductor came along and asked me for my fare, I asked him what it was to Lagro? He replied, forty cents. I told him I thought he was mistaken. He remarked that it was forty cents. I said to him, ' You have carried me twice before this; once last evening; don't you remember it ? ' He said he did. Then he said to me : ' Do you say you will not pay me forty cents ?' I told him I would not pay but thirty cents. He then said, 'I will put you off the train, if

you do not pay me forty cents.' The forty cents he repeated two other times. I said to him, 'If you think best, you had better do it.' Then he looked out the window to the brakeman and made motions to him to put on the brakes, and then began to pull the bell rope. The train did not seem to check up, and he called out the door and spoke to the brakemen to tighten the brake, and he again began to pull the bell rope; and we got out on the platform by the crowd pushing from behind, and then again he asked me: 'Do you say you will not pay me forty cents?' I replied to him, I would not pay but thirty cents. Then he told me to get off the train, that he did not want to be waiting there. I looked to see what kind of a place it would be to be thrown off. There were several iron rails lying there and a ditch close by, and I concluded to get off without being pushed off, and I then stepped off. I told him all the other conductors charged the rate I named He said, 'they done wrong; no reason why he should.' I think I acted quietly and peaceably, and think I did nothing out of the way. I had said nothing to any one, and saw no one I knew. My purpose was to go to Lagro. * * * * I am now in my sixtieth year; after being put off the train, I went to Lagro; distance about three and one-half miles; I took the tow-path from the railroad crossing; I was about two or two and one-half miles below Antioch; don't know the distance exactly. * * * I think I had fifty cents in my hand, and offered to pay him thirty cents; he was very short; had but few words; made no explanation; I supposed he wanted a little spending money."

This is the substance of the appellee's account of the matters, on which he has founded this action. The first two matters referred to in his evidence are the matters of extortion, counted upon in the first two paragraphs of his complaint. In his evidence he claims that ten cents was extorted on each of the two trips on occasions, making in

the aggregate the sum of twenty cents. As the court below instructed the jury that the measure of damages would be, " upon the first two paragraphs of the complaint, the amounts extorted from the plaintiff by overcharging," we may reasonably conclude, we think, that all the damages allowed the appellee by the jury in their general verdict, with the exception of the twenty cents extorted, were assessed upon the cause of action stated in the third paragraph of his complaint. With respect to this third paragraph, we have given the appellee's version, under the sanction of his oath, of the matter counted on in said paragraph, in almost his exact language, as we find the same in the bill of exceptions containing the evidence.

Upon the case stated in the third paragraph of the complaint, and the evidence given on the trial, the court, of its own motion, gave the jury trying the cause the following instruction, to wit:

" 3. ' In this State the law prohibits a railroad company from ejecting a passenger from the cars for a refusal to pay his fare, except at a usual stopping place; and if you find from the evidence that the. defendant [plaintiff?] was put off the train at a place remote from a usual stopping place, for no other reason than that he refused to pay his fare, then the plaintiff is entitled to recover."

It is evident, we think, that this instruction was founded upon the court's construction of section 28 of the general law of this State providing for the incorporation of railroad companies, approved May 11th, 1852. Sec. 28 reads as follows:

" SEC. 28. If any passenger shall refuse to pay his fare or toll, the conductor of the train, and the servants of the corporation may put him out of the cars at any usual stopping place." 1 R. S. 1876, p. 709.

It would seem, from the language used in the instruction above quoted, that the court must have construed the provisions of this section 28 of the statute as amounting to

a positive prohibition against any railroad company's right to put any passenger out of its cars, for his refusal to pay his fare, at any other place than a usual stopping place for its cars on the line of its road. Such a construction of the section quoted is not required by the language used therein, and is not in harmony with the general law of this State on the subject of the section, and therefore we are not inclined to adopt it. The section is permissive, and not prohibitory, in its terms. It allows a railroad company to do a given thing, for a specified reason, at a certain place; but the law does not prohibit the railroad company, either in that section or elsewhere, from doing the same thing for the same or any other valid reason, or at any other place. In the case of The Jeffersonville Railroad Co. v. Rogers, 28 Ind. 1, it was well said by FRAZER, J.: "The passenger who refuses to pay fare is from that moment an intruder, and wrongfully on the train. He has no lawful right to be carried gratis to the next station. This is too plain to admit of debate. It follows, that he may be expelled at once." The case cited was again before this court, on a subsequent appeal, when the following language was used in the opinion of the court, by WORDEN, C. J.: "If the expulsion had been rightful in itself, it might, perhaps, have been legally effected at any time of day or night, and at any place, without reference to stations or the convenience and comfort of the party expelled." The Jeffersonville Railroad Co. v. Rogers, 38 Ind. 116. The right of the railroad company to expel a passenger from its cars for his refusal to pay fare, as a rule, at any time "and at any place without reference to stations," was not doubted or questioned by the learned judge who wrote the opinion last referred to, but in that case it was shown that the passenger, Rogers, before entering the appellant's car, had properly applied at its ticket office for a ticket, and, without fault on his part, but through the wilfulness, mistake or inadvertence of its agent, had been unable to se

cure such ticket; and it was very properly held, we think, on those facts, that Rogers was entitled to be carried, by his payment to the conductor of the price of the ticket, and could not be required to pay, in addition to such price, the excess which, by the rules of the company, was charged the passenger who, without an effort to purchase a ticket, paid his fare on the cars to the conductor of the train.

In the case last cited, and in the case of *The Indianapolis, etc., Railway Co.* v. *Rinard*, 46 Ind. 293, the legal right of a railroad company to discriminate between the amounts of fare where a ticket is purchased, and where the fare is paid upon the train, and to demand, exact and receive a larger fare, in the latter case, than the price charged for a ticket, is fully recognized by this court. In the case at bar, therefore, the appellant had the legal right to exact from the appellee, for his fare between Antioch and Lagro, a larger sum of money when paid to the conductor on the train, than it would have charged him for a ticket between the same places; and when the appellee refused, as he did, to pay the fare demanded, the conductor of the train had the right, and it was his duty as a faithful servant, to put the appellee out of the cars and off his train, at any time and at any place on the line of the road, without reference to stations, and without actual danger to his life or person. When he refused to pay his fare, he became an intruder, a mere trespasser, in the appellant's cars; and he had the rights of a trespasser, and no other rights. Certainly he had no right to be carried by the appellant, without charge, to the next station.

It would seem from the record before us, that there were no intermediate stations on the appellant's road between Antioch and Lagro, only a distance of six miles intervening between said places. The appellee entered the appellant's cars at Antioch to go to Lagro, and, when the conductor demanded his fare, the train was very nearly equidistant between the two places. When he refused to

pay his fare, it surely was not the appellant's · duty to carry him to Lagro, the place of his destination, before putting him off the train. Yet, if the court's construction of said section 28 of the statute, as contained in the instruction above quoted, were the correct one, the necessary consequence would be that all railroad companies in this State could be compelled to carry all their passengers gratis to the next " usual stopping place." ·

It is claimed by the appellee in this case, and it was so testified by him as a witness on the trial, that he had never heard before that an extra charge was made for fare when paid on the train. It is difficult to reconcile and harmonize the appellee's evidence in this regard with the first two paragraphs of his complaint and his evidence in support of said paragraphs. For, in those paragraphs, he claimed, and his evidence tended to sustain such claim, that, within one week prior to his attempted trip from Antioch to Lagro, the appellant's conductor had, on two different. occasions or trips, extorted from him on the train ten cents on each trip more than the usual or customary fare. It is difficult to believe that he had so recently suffered the loss of these two sums, of ten cents each, by extortion as he claimed, without having inquired into and ascertained, as he might easily have done, the probable cause or pretext for such alleged extortion. But, however this may have been, it is not claimed or pretended that he could not have readily ascertained, by proper inquiry, the rules and regulations of the appellant in regard to the purchase and price of tickets, and the payment of passenger fare on the train. If he did not know the appellant's rules on these subjects, he ought ·to have inquired of its agents, before he became a passenger on its cars. It is not claimed that he did not have an abundance of time and ample opportunity to make all proper inquiries and purchase a ticket of the appellant's agent at Antioch before he entered the cars. Having failed to purchase a ticket, or

to ascertain the rules of the appellant in regard to the payment of passenger fare on the train, he was in fault, and, when the conductor demanded of him ten cents more than what he supposed was the regular fare, he should have paid the money and investigated the matter afterward. Upon his refusal to pay his fare, the conductor was fully authorized and justified, as we have already said, in putting him out of the cars and off the train, at any place not dangerous to his life or limbs.

For the reasons given, we are of the opinion that the court's instruction, above set out, to the jury trying the cause, was erroneous, and ought not to have been given, and, on this ground, a new trial ought to have been granted.

Another cause for a new trial assigned by the appellant was that the damages were excessive. We have already said, that on the appellee's evidence, and under the instructions of the court, the jury could not have assessed the appellee's damages, on the first two paragraphs of his complaint, at a sum in excess of twenty cents. We are bound to conclude, therefore, that the residue of the damages, to wit, the sum of four hundred and ninety-nine dollars and eighty cents, was assessed by the jury, in appellee's favor, for and on account of the matters stated in the third paragraph of his complaint. In his evidence the appellee gave, in substance, the following account of the matters for which the jury assessed his damages in the sum last named :

On a summer evening, in the month of August, 1873, at a point on the appellant's road between Antioch and Lagro, at the request of the conductor of a passenger train on said road, he, the appellee, having refused to pay his fare stepped out of and off the appellant's cars. From that point he walked on the tow-path to the town of Lagro, a distance of about three and one-half miles. The appellee did not state in his evidence that the weather was unpleasant or disagreeable from any cause, or that the

tow-path was in bad condition in any way; nor did he claim that he had been injured, sickened or even fatigued by his evening walk.

We need not and will not dwell upon this question, for it seems to us, that the bare statement of this matter, as the appellee has stated it in his evidence, is convincing and conclusive proof that the damages were excessive. This cause was well assigned, and for it, we think, a new trial ought to have been granted.

One other alleged error, properly assigned, has been urged with much earnestness by the appellant's counsel, and we think that we ought to consider and decide the question thereby presented, even at the risk of being regarded somewhat tedious. This alleged error relates to the action and decision of the court below, on the appellee's motion, in requiring and directing that this cause and the papers therein should be returned to that court from the Grant Circuit Court, whither the same had been previously sent, on the appellant's application, on a change of venue duly granted. The record shows, as we have already said in our statement of this case, that at the October term, 1873, of the court below, on the appellant's motion, the venue of this action was duly changed to the Grant Circuit Court, and seven days were given to perfect such change. It is further shown by a proper bill of exceptions, that the order for such change of venue was made and entered on the 29th day of October, 1873, and, on the same day, the costs of such change having been paid by the appellant, the clerk of the court below made a transcript of the proceedings in that court and delivered the same, with the papers in the cause, to the appellant's attorney for transmission to the Grant Circuit Court; that afterward, at the December term, 1873, of the court below, the appellee filed therein his affidavit to the effect that the change of venue theretofore granted in this case had not been perfected within the seven days allowed by the court

for that purpose, but that the appellant's counsel, to whom the transcript and files had been delivered for transmission, had not filed the same in the Grant Circuit Court within the time allowed, nor until the 13th day of November, 1873, or eight days after the expiration of said seven days; that upon said affidavit the appellee moved the court below for an order requiring the clerk of the Grant Circuit Court to return the said papers and files in said cause to the court below, and that this case should there be re-docketed and stand for trial in said court as other civil actions therein; that the appellant appeared specially, without notice, to appellee's said motion, and by the affidavit of the appellant's counsel showed the court that the delay in the transmission of the papers in this case to the Grant Circuit Court was not intentional on his part, but the result, probably, of mistake or oversight, and suggested to the court that the cause was then pending in the Grant Circuit Court, which court only could have jurisdiction of the appellee's motion; and that the court below entertained and sustained the said motion of the appellee, and made an order requiring the clerk of the Grant Circuit Court to return the papers in this case to the former court, and re-docketed and held this action for trial in said court, to all of which the appellant at the time excepted.

It seems to us that these proceedings of the court in this case were not authorized by law, but were contrary thereto. In section 208 of the practice act it is provided, *inter alia*, that "if a party applying for a change of venue shall fail to perfect the same      *      *      *      *      within such time as the court shall prescribe in the order granting the change, said party shall pay all the costs made in the case up to the time of such failure." 2 R. S. 1876, p. 119. In the case of *Cooper* v. *The Arctic Ditchers*, 56 Ind. 233, in commenting on this section 208 of the code, it was strongly intimated, though not expressly decided, by this court, that the applicant for a change of venue, who fails

to perfect the same as provided in said section, can not be punished for such failure in any other mode, or to any greater extent, than the law itself provides for, namely, that "said party shall pay all the costs made in the case up to the time of such failure." What we thus intimated in the case cited, we now expressly decide, for it seems to us that such decision merely gives expression to the true intent and meaning of the statute.

Besides, the record shows that, at the time these proceedings were had in the court below, this action was lawfully pending in the Grant Circuit Court, and that the latter court had previously assumed jurisdiction of the case, and had, on the 20th day of November, 1873, made an order for the continuance of said cause until the next term of said court. It seems to us, therefore, that from the time the papers in this cause were filed in the Grant Circuit Court on such change of venue, to wit, from the 13th day of November, 1873, that court had jurisdiction of this action, and of all proper motions to be made therein. If the appellee, upon the facts stated in his affidavit, had the right (but we think he had not) to have this case and the papers therein remanded and sent back to the court below, we would be of the opinion that he should have addressed his motion to that end to the Grant Circuit Court; for, at that time, the latter court alone had jurisdiction of the case, and of all proper motions to be made therein.

The judgment is reversed, at the appellee's costs, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings in accordance with this opinion. And, if the appellant desire it, the court is also instructed to order its clerk to make out a transcript of its proceedings in this case, and to transmit the same and all the papers in the cause, as upon change of venue, to the clerk of the Grant Circuit Court.

Petition for a rehearing overruled.