# South & North Ala. Railroad Co. *v.* Huffman.

*Action against Railroad Company, as Common Carrier, by Ejected Passenger.*

1. *Regulation as to passengers travelling on freight trains.*—In allowing passengers to travel on freight trains, a railroad company may impose reasonable limitations; and a regulation by the defendant company in this case, permitting passengers to travel on a particular freight train from Birmingham to Blount Springs, is not an unreasonable restriction.

2. *Rights of traveller, with ticket, on wrong train.*—The plaintiff, having purchased, at Birmingham, a ticket to Hanceville, a station ten miles beyond Blount Springs, by mistake entered a freight train which, by the regulations of the railroad company, was not authorized to carry passengers beyond Blount Springs; and being informed by the conductor, after the train had started, that he was on the wrong train, and could not be carried beyond Blount Springs, he declined to leave the train, as the conductor offered him an opportunity to do, and declared that he would go on; and having surrendered his ticket, which the conductor thereupon cancelled, he travelled to Blount Springs, and was there required by the conductor to leave the train. *Held*, that these facts showed no wrong on the part of either the conductor or the railroad company; though, if the conductor had taken and cancelled the ticket on presentation, without giving the information as stated, he would probably have been guilty of a tort.

3. *Liability of railroad company for mistakes and erroneous advice of its agents in charge.*—Cases cited, in which " it was ruled that the railroad corporation was liable for the erroneous advice and direction given by its agents in charge;" and the court adds : " We think the rule a good one, and will adopt it."

4. *Vindictive damages ; when recoverable.*—In an action against a railroad company, by a passenger, who, having purchased a ticket to travel on a freight train, by mistake entered a train which was not allowed to

carry passengers beyond a station ten miles short of his destination, and, being so informed by the conductor upon presentation of his ticket, declined to leave the train, as he was offered an opportunity to do, and travelled to the station ten miles short of his destination, where he was required by the conductor to leave the train ; a recovery can not be had for vindictive damages, if the conductor, in requiring him to leave the train, did not use any actual force to eject him, nor speak to him in a rude, rough, or angry manner.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. S. H. SPROTT.

This action was brought by Thomas Y. Huffman, against the appellant, a domestic corporation, as a common carrier, to recover damages for an alleged tort, under the following circumstances : Being in Birmingham, on Saturday, December 31st, 1881, the plaintiff purchased a ticket to travel on the defendant's road, by a freight-train, to Hanceville, a station ten miles beyond Blount Springs. Indorsed on the ticket were the words : "Sold for train No. 12 ;" but the plaintiff entered train No. 16, which left a few minutes afterwards ; and, as he testified, he did not notice the indorsement, nor the number of the train, until he was informed of his mistake by the conductor, on presentation of his ticket. The conductor then offered to stop the train, and allow him to get off ; at the same time informing him that he (the conductor) was not allowed to carry passengers beyond Blount Springs, and would lose his position if he violated the instructions. The plaintiff told the conductor that the train was pointed out to him by the ticket-agent (Proctor) from whom he bought his ticket, declined to leave the train, and declared that he would go on ; and the conductor then cancelled his ticket. This conversation occurred, according to the plaintiff's own testimony, " when said train was three or four miles north of Birmingham ;" and according to the defendant's testimony, " when said train had proceeded about four hundred yards from the place where plaintiff entered it, and about two hundred yards from the defendant's depot in Birmingham." When the train arrived at Blount Springs, about ten o'clock at night, the conductor again told plaintiff that he must get off, or he would be compelled to put him off ; and the plaintiff then left the train, protesting and remonstrating against being required to leave, but without any actual force being used.

On the trial, as the bill of exceptions shows, when the plaintiff had closed his evidence, the defendant offered in evidence a general order, or regulation of said railroad company, which was printed, having been adopted on the 22d August, 1881, and in force on said 31st December, to this effect : "Passengers are allowed to travel on the following freight-trains, on conditions given below, but on no others, except by a special

[South & North Ala. R. R. Co. v. Huffman.]

order from the president, superintendent. . . On train No. 16, between Birmingham and Blount Springs, and intermediate points. . . Agents are directed to sell tickets for trainss pecified, to or from points designated, but will not sell to or from other points, or for other freight-trains ; and conductors will not carry passengers on any other trains, except by special permit." On objection by the plaintiff, the court excluded this order as evidence, and also other evidence, offered in connection with it, showing that said printed order was posted in conspicuous places, at the defendant's depot, ticket-office, waiting-rooms for passengers, &c., in Birmingham ; to which rulings the defendant duly reserved exceptions. The bill of exceptions afterwards adds : " The defendant introduced evidence tending to show that there was a regulation of said railroad company, then of force, that said train No. 16 should carry passengers no further north than Blount Springs."

The court charged the jury, on the request of the plaintiff, among other things as follows : " If the jury believe, from the evidence, that on the evening of December 31st, 1881, plaintiff applied at the office of the defendant's ticket-agent in Birmingham, for a ticket as a passenger on the defendant's road to Hanceville, a station ten miles beyond Blount Springs, and asked said agent if there was a train leaving Birmingham that evening, on which he could be carried as a passenger to Hanceville ; and that said ticket-agent informed plaintiff that there was a freight-train which would leave Birmingham that evening, and on which plaintiff could be carried through to Hanceville ; and that plaintiff, upon this information, purchased a ticket for Hanceville, paying the price demanded for said ticket, upon which were printed or stamped the words, *Sold for train No. 12 ;* and that plaintiff, after he had purchased said ticket, entered the car attached to freight-train No. 16, which had been pointed out to him by said ticket-agent as the train leaving Birmingham at 6:30, and which was the only train leaving at that time ; and that he entered said train in good faith, and under the honest belief, from what he had been told by said ticket-agent, that said train would carry him through to Hanceville ; and that he knew no better, until the conductor on said freight-train called for tickets, when said conductor told him he was on the wrong train, and proposed to put him off the train ; and if the jury should further believe that plaintiff did not then, nor at any time, agree to get off said train at Blount Springs, and that he conducted himself properly, and that the conductor took the ticket and retained it, and carried the plaintiff on to Blount Springs, and there ejected him from the car, and put him off the train ; then plaintiff would have the right to recover in this action ; and if the jury should further be-

lieve, from the evidence, that the conductor was grossly negligent, and treated plaintiff in an insulting, willful and oppressive manner, then plaintiff may recover punitive or exemplary damages."

The defendant excepted to this charge, and requested seven charges in writing, among which were the following: 3. "If the jury believe, from the evidence, that there was a rule or regulation of the defendant, whereby passengers on said freight-train, on which plaintiff took passage, could be carried on said train no further north than Blount Springs, then such rule or regulation was reasonable, and one which the defendant had a right to prescribe." 6. "If the jury believe, from the evidence, that the defendant's agent, Proctor, in selling and stamping the ticket sold to plaintiff, and in pointing out the train to him, acted in good faith; and that the conductor notified plaintiff, when he took up the ticket, that it was for train No. 12, that his train was No. 16, that he could not carry him further than Blount Springs, and that his instructions were to carry passengers no further north than Blount Springs; and that the conductor, when the train arrived at Blount Springs, notified plaintiff that the train was at Blount Springs, and informed him that he must get off there; and that the conductor did not use any actual force to eject plaintiff, and did not speak to him in a rude or angry manner, but only told him that he must get off the train; and that plaintiff then said he would get off, and did get off there; then plaintiff can not recover punitive damages in this case." 7. "If the jury believe, from the evidence, that defendant's agent, Proctor, acted in good faith in selling and stamping the ticket sold to plaintiff, and in pointing out the train to plaintiff, and that the conductor, when he took up the ticket, notified plaintiff that his ticket was for No. 12, and that his own train was No. 16, and that he could not, under his instructions, carry him further than Blount Springs; and that the conductor notified plaintiff when he arrived at Blount Springs, and informed him that he must get off, but did not use actual force to eject him, nor speak to him in a rude, rough, or angry manner; then plaintiff can not recover punitive damages, or what is called 'smart money,' but can only recover such actual damages as he may have proved." The court refused each of the charges asked, and the defendant duly excepted to their refusal.

The exclusion of the evidence offered by defendant, the charges given, and the refusal of the several charges asked, are now assigned as error.

HEWITT & WALKER, and THOS. G. JONES, for appellant.

[South & North Ala. R. R. Co. v. Huffman.]

McADORY & GILLESPIE, *contra.*   (No briefs on file.)

STONE, C. J.—Since railroads have been constructed, they have driven from the field almost every other mode of travel and transportation, between points connected by them.   They are huge enterprises, requiring very many officers, agents and employees, for their successful operation.   The travelling and shipping public, in having transactions with them, are brought in contact only with their officers and employees, of relatively inferior grade.   The traveller sees and knows only the local ticket-agent, the conductor, and, perhaps, the baggage-master. To him, they present the embodiment of the corporation, to whom he must look for protection, and, to a limited extent, instruction.   He is not presumed to know the rules and regulations of the company; for, of necessity, they must be many, and, to the uninformed, intricate.   His purpose is travel or transportation to a given point, and the railroad officials must supply the details.   He has neither the requisite knowledge nor power to furnish these.   If travel be his aim, he approaches the ticket-agent, informing him of his point of destination. Paying for the ticket the price demanded under the tariff of charges, he has done all required of him to secure his right of transit over the railway, to the point or station to which he requested a ticket.

It is claimed for plaintiff, and was so testified by him, that his application for a ticket was made late in the afternoon, or evening—according to his version, after six o'clock.   He informed the agent that he wished to go that evening to Hanceville, and he obtained a ticket to Hanceville.   He further testified, that the ticket-agent pointed out to him a freight-train, with caboose attached, then about to leave in the direction of Hanceville, and informed him that was the train he should go on.   He entered the train, and remained there, until the train moved off soon afterwards.   Up to this time, the plaintiff's testimony is all that sheds any light on the transaction.   This closes all connection with the ticket-agent.

The plaintiff and the conductor differ, as to what took place after the train was put in motion.   The conductor called for plaintiff's ticket, as he says, some two to four hundred yards from the point of departure, and within the corporate limits of Birmingham, where plaintiff entered the train.   The plaintiff says, it was three or four miles after they had left the depot. In all else there is no substantial difference between them.   As soon as the ticket was shown to the conductor, he informed plaintiff he was on the wrong train, and that under his orders he was not permitted to carry him beyond Blount Springs, a station some ten miles short of Hanceville.   He then proposed

[South & North Ala. R. R. Co. v. Huffman.]

to plaintiff to stop his train, and permit him to get off.  Plaintiff replied, that he had a ticket to Hanceville, and wished to go there; and that the ticket-agent had pointed out this as the right train.  The conductor still informed him he would be compelled to put him off at Blount Springs, and could not carry him to Hanceville; and he offered plaintiff the privilege of then getting off.  Plaintiff replied, that he would go on.  The conductor them took possession of the ticket, and cancelled it.  Nothing further is shown, until the train stopped at Blount Springs.  At Blount Springs, the plaintiff importuned the conductor to let him proceed to Hanceville, and was unwilling to leave the train.  The conductor again informed him he had no authority to carry him farther, and that he, the conductor, would lose his place if he did so.  He further informed the plaintiff, that he must leave the train, or he, the conductor, would have to put him off.  On this representation, the plaintiff left the train, unwillingly and under protest, ten miles short of Hanceville, his destination.  There was testimony that the train on which plaintiff travelled—a freight-train with caboose attached—was, under the road's regulations, permitted to carry passengers between Birmingham and Blount Springs, but no further north.  This presents all the material aspects of the testimony.

It is common knowledge, that railroad corporations usually employ two classes of trains; one for passengers, and another for freight.  Freight-trains do not generally transport passengers, and when they do so, it is by permission of the railroad's management; and when the permission is granted, it may be done with any reasonable limitations the management may impose.  There is this qualification:  A railroad, being a common carrier, can not discriminate between persons, if such persons conform to the rules of the corporation.  Less than this could not be classed as a rule.  We can perceive nothing unreasonable in the rule, or regulation, which it is claimed was imposed on this train.  If such regulation be shown to exist, then the conductor committed no wrong in requiring the plaintiff to leave the train at Blount Springs.  In this connection, and to this end, the Circuit Court should have permitted the defendant to prove the regulation, by the order itself.  It was admissible for no other purpose.

It is contended for appellee, that the conductor was guilty of a tort, in this: that after taking and retaining plaintiff's ticket, which on its face secured to him transportation to Hanceville, he had no right to eject him from the train, until he was carried the full distance the ticket called for.  This would probably be the case, if the conductor had silently taken and cancelled the ticket, without giving to plaintiff the requisite infor-

32

mation. The testimony, however, tends to show that, at the first sight of the ticket, the conductor informed the plaintiff he could not carry him beyond Blount Springs, and that he then proposed to stop the train, and allow plaintiff to get off. The testimony further tends to show, that plaintiff declined to get off, saying he would go on. If this be so, then plaintiff must be held to have elected to use and get the benefit of his ticket as far as Blount Springs; and doing so, the conductor had no authority to require him to leave the train, until he reached Blount Springs. If he had done so, he would have been guilty of a tort. The ticket secured plaintiff's right of transportation over defendant's road, as far towards Hanceville as the train he was on had authority to carry him. Availing himself of this right, he can not complain that his ticket was taken up and cancelled. To hold otherwise, would be to require the road to carry plaintiff to Blount Springs, without compensation, notwithstanding he elected to go so far. If the road's instructions were such as is claimed, we see no evidence of wrong done either by the railroad company, or by the conductor, so far as the conduct of the latter is concerned. He did only what he was bound under his instructions to do, and there is no evidence that he used any violence, force, or rudeness in doing so.

Recurring to the conduct of the ticket-agent: There are many adjudged cases, in which railroad corporations have been held responsible for injuries resulting from erroneous advice or instructions given by the officers of the corporation. The case of *Burnham v. Gr. Trunk Railway Co.*, 63 Me. 298—s. c., 18 Amer. Rep. 220—was a case where the erroneous instruction was given by the ticket-agent. Of similar import are following cases : *Galveston, H. & San A. R. R. Co. v. Donahoe*, 56 Tex. 162 ; *Beauchamp v. Inter. & Gr. N. R. R. Co., Ib.* 239 ; 9 Amer. & Eng. R. R. Cases, 287, 207. In the following cases the fault lay with the conductor : *Lambeth v. N. C. Railway Co.*, 66 N. C. 494—s. c., 8 Amer. Rep. 508 ; *Ga. R. R. & Banking Co. v. McCurdy*, 45 Ga. 288—s. c., 12 Amer. Rep. 577 ; *Palmer v. Railroad*, 3 So. Car. 580—s. c., 16 Amer. Rep. 750 ; *Vankirk v. Penn. R. R. Co.*, 76 Penn. St. 66—s. c., 18 Amer. Rep. 404 ; *Lake Erie & W. R. R. Co. v. Fix*, 88 Ind. 381—s. c., 45 Am. Rep. 464. In all these cases, it was ruled that the railroad corporation was liable for the erroneous advice and direction given by its agents in charge. We think the rule a sound one, and will adopt it. See, also, Redfield on Railways, 98* *et seq. ; Laurans v. R. R. Co.*, 15 Minn. 49—s. c., 2 Amer. Rep. 102 ; *Toledo, W. & W. Railway Co. v. Wright*, 68 Ind. 586—s. c., 34 Amer. Rep. 277 ; *Toledo, P. & W. Railway Co. v. Pindar*, 53 Ill. 447—5 Amer. Rep. 57 ; *Piedmont & A.*

*Life Ins. Co. v. Young*, 58 Ala. 476; *M. & E. Railway Co. v. Kolb*, 73 Ala. 306.

In the case of *Wilkinson v. Searcy*, at this term, we defined with a good deal of care the nature and character of a tortious act, which will authorize vindictive or punitive damages. We have no wish to repeat, or depart from what we there said. We hold that the last two charges asked by defendant—those relating to vindictive damages—ought to have been given.

Reversed and remanded.