HOMER E. WARDWELL vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

July 7, 1891.

**Carrier—Demand on Train of Less than Regular Fare and Payment by Passenger—Subsequent Demand of Balance of Fare—Ejecting Passenger for Non-Payment—Repayment of Unearned Fare.—** Plaintiff, without a ticket, though he had full opportunity to procure one, boarded defendant's train at Faribault, to go to Owatonna, and, when he told the fare collector where he was going, the latter told him the fare was 50 cents, which he paid. This was more than the ticket fare, but 6 cents less than the train fare. Before the train arrived at Walcott, the first station at which the train was to stop, the collector informed plaintiff of his error in the amount of the fare, and required him to pay the 6 cents, which plaintiff refused, and the collector told him unless he paid it he must leave the train. On arrival at Walcott, where the train stopped,

the plaintiff persisting in his refusal, the collector put him off, and then returned him the 50 cents, less the fare from Faribault to Walcott. *Held*, that the collector, on discovering the mistake, might, within a reasonable time, require plaintiff to pay the other 6 cents.

Same—Right of Passenger to Pay after Refusal.—Also that, notwithstanding his first refusal, the plaintiff might, at any time before the arrival at Walcott, still pay the 6 cents, and secure the right to be carried to Owatonna.

Same — Waiver of Company's Right to Require Balance of Fare. — Also that the collector's retention of the 50 cents till the arrival at Walcott was not a waiver of the right to require payment of the 6 cents.    Qualifying *Du Laurans* v. *First Div.*, etc., *R. Co.*, 15 Minn. 29, (49.)

Same—Retention of Fare Earned before Ejecting Passenger.—Also that the company had a right to be paid the fare from Faribault to Walcott, and the collector might retain it out of the 50 cents.    Overruling *Du Laurans* v. *First Div.*, etc., *R. Co.*, 15 Minn. 29, (49.)

Same — Ejecting Passenger before Repaying Unearned Fare held Wrongful.—Also that the collector could not retain the entire amount, and also put plaintiff off, but could put him off only upon first returning to him the 50 cents, less the fare to Walcott, and, having put him off before doing so, the expulsion was wrongful.

Appeal by defendant from an order of the district court for Steele county, *Buckham*, J., presiding, refusing a new trial after a verdict of $200 for plaintiff.

*F: W. Root* and *W. H. Norris*, for appellant.

*Amos Coggswell* and *Sawyer & Sawyer*, for respondent.

GILFILLAN, C. J.    The plaintiff, without procuring a ticket, though he had full opportunity to do so, boarded a passenger train of defendant at Faribault to go to Owatonna.    The ticket fare was 46, the train fare 56, cents.    Soon after the train started, the fare collector came to plaintiff and asked him where he was going, and, on being told to Owatonna, said the fare was 50 cents, which plaintiff then paid him.    A few minutes after, and before the train reached Walcott, the first station from Faribault, the collector came again to plaintiff, and told him he had made an error in the amount of the fare, and insisted that he should pay the other 6 cents, and, on plaintiff refusing, told him unless he paid it he would put him off the train.

Plaintiff still refused, and on the arrival of the train at Walcott, plaintiff persisting in his refusal, the collector put him off, and, after he was off, returned to him the difference between the 50 cents and the fare from Faribault to Walcott.

Assuming (what, in view of the defendant's regulations posted up in its passenger stations and passenger cars, can hardly be assumed) that the collector had authority to accept for the fare any less than the 56 cents, and waive the company's right to full train fare, the receipt by the collector, through mistake, for the full fare, of less than the fare, did not amount to such waiver. The collector had a right, on discovering the mistake, to require the plaintiff, certainly within a reasonable time, on informing him of the error, to pay the remainder of the train fare, just as any one, on discovering a mistake in payment, may, within a reasonable time, require its correction. And it was the duty of the plaintiff, on being informed of the error, to pay the remainder of the full train fare, as demanded by the collector. Nor was the collector's retention of the money paid him by plaintiff (still assuming his authority to waive any part of the train fare) until the arrival of the train at Walcott, and while the question whether the plaintiff would pay the remaining 6 cents or leave the train was an open one, (for, notwithstanding his previous refusal, the plaintiff might, until the arrival at Walcott, where the train was to stop without regard to his matter, still pay and secure the right to go to his intended destination,) such a waiver, and especially as the collector insisted on payment of full train fare, and informed plaintiff that he must pay or leave the train. The rule laid down in *Du Laurans* v. *First Div., etc., R. Co.*, 15 Minn. 29, (49,) to the effect that when a passenger tenders in good faith, on the train, the ticket fare as full fare to his place of destination, and the conductor takes and retains it, he thereby waives the right to require the passenger to still pay the difference between the ticket and train fare, is (assuming the conductor's authority to waive it) undoubtedly correct as applied to a case where, from the circumstances attending the tender, receipt, and retention of the money, the passenger is justified in the belief that it was accepted in full for his fare to the place of his destination. Thus, if the conductor should receive and retain it, with-

out demanding more, till the train had passed the place at which he must exercise or abandon the right to eject the passenger for non-payment, the latter would have the right to assume that the amount paid was satisfactory.    But it cannot correctly be applied to a case like this.    It would be equivalent to the proposition that the collector waived payment while insisting upon it, a proposition contradicting itself.

To determine whether he would pay the difference demanded, or persist in his refusal and leave the train, the plaintiff had until the train stopped at a place where he might be put off.    So long as he had that election, the collector might retain the amount paid him to abide it.    As soon as it was made, to wit, when plaintiff finally refused at Walcott, the right of the collector to retain the entire sum paid ceased, except he chose to retain it for the very purpose for which it was paid him; that is, for the full fare to Owatonna.    He could not retain the entire sum, and also eject the plaintiff.    As precedent to the right to expel him from the train, he should have returned to plaintiff what he was entitled to of the money, and until he did that he had no right to put him off.    It is true he returned it to him immediately after the expulsion.    But the wrong had then already been committed, and could not be repaired by doing what ought to have been done before the expulsion.    We have said the collector ought to have returned to him what he was entitled to of the money, (not the whole of the money,) because we hold that where a passenger refuses to pay the fare rightfully demanded of him to his place of intended destination, and the carrier puts him off at a proper place because of such refusal, the carrier has a right to be paid the proper fare for carrying him to that place, and to retain it out of any money the passenger may have paid on account of fare.    This is contrary to what was decided (the court being divided upon it) in the *Du Laurans Case.*    The reasons given for the decision in that case were that the passenger does not intend to make a contract to be carried to the place, short of his intended destination, where he is put off, and that the carrying the passenger in that case to the place where he was put off was no benefit, but, on the contrary, a detriment to him.    When, under circumstances that imply a request,

a railroad company carries a passenger from one point to another, it is no concern of the company, as affecting its right to compensation, that it is or is not to the advantage of the passenger to be carried to and left at the latter place, and it is therefore immaterial. The sole question is, was the service rendered at the request, express or implied, of the passenger? When one voluntarily enters a train of cars, and expressly requests to be carried to a particular place, but refuses to pay the rightful fare to that place, so that the company has a right to put him off before reaching that place, a request must be implied to be carried to the place where the company may rightfully put him off. His intention must be taken to be to ride to the destination expressed by him, if the company will carry him to that place without his paying the fare, and, if it will not, then to ride to such place where the company may rightfully put him and does put him off. That in such case he may be carried to and left at such place is what he must be presumed to expect and intend. And he can have no right to expect that the company will put him off till the train reaches its first regular stopping station. The train need not stop for the mere purpose of putting him off.

The facts upon which we hold that the expulsion of the plaintiff from the train was wrongful were established at the trial, and not disputed, so that he was entitled to a verdict. The instructions of the court assigned as error, going only to the right to a verdict, were therefore, if erroneous, harmless. We see no error in the instructions touching the measure of damages.

Order affirmed.