PHETTIPLACE, Respondent, vs. THE NORTHERN PACIFIC RAILROAD COMPANY, Appellant.

*February 25 — March 21, 1893.*

*Railroads: Ejection of passenger: Refusal to pay extra fare: Damages.*

1. Sec. 1818, R. S., providing that if any passenger shall refuse to pay his fare it shall be lawful to put him off the cars at any usual stopping place or near any dwelling house, by necessary implication prohibits his expulsion at any other place.

Phettiplace vs. The Northern Pacific R. Co.

2. A passenger going upon a train at a station at which tickets are not sold cannot lawfully be charged more than the regular fare because of his not having a ticket, even though a process is created by which he may at some future time get back such excess.

3. One who had bought a ticket from S. to P., decided, before reaching P., to go on to T., the next station beyond. There was no ticket office at P. *Held*, that he could not lawfully be charged more than the regular rate from P. to T.

4. For the unlawful ejection of a passenger from a train at a point distant from any station or dwelling house, because of his rightful refusal to pay more than the regular fare, an award of $300 damages is *held* not excessive.

APPEAL from the Circuit Court for *Douglas* County.

Plaintiff was a passenger on a train of cars run by the defendant company on its railway, and was expelled therefrom because of his alleged refusal to pay his fare. This action is to recover damages for such expulsion.

The plaintiff purchased a ticket at the city of Superior for passage on defendant's railway from that point to Pike Lake, a station on the same railway east of Superior. He went upon a passenger train and commenced his journey. Before reaching Pike Lake he concluded to go on to Topside, a station about two. miles east of Pike Lake, and so informed the conductor of the train, who took up plaintiff's ticket. After the train had passed Pike Lake, the conductor called upon plaintiff for his additional fare from Pike Lake to Topside. The regular fare was seven cents, and the plaintiff offered the conductor that sum, but the latter refused to receive it in payment of his fare, and, under a rule of the company, demanded twenty-five cents additional, and informed the plaintiff that he would give him a voucher which would entitle him to receive from the company such additional twenty-five cents, if called for at Superior or certain other stations on the defendant's road. The plaintiff refused to pay the additional twenty-five cents, and the conductor stopped his train at a point from

Phettiplace vs. The Northern Pacific R. Co.

one half to three fourths of a mile east of Pike Lake, which point was not a usual stopping place for trains and was not near any dwelling house, and compelled the plaintiff to leave the train. The plaintiff walked on the track to Topside. Pike Lake was a mere flag station, and tickets for passage on the railway could not be purchased or obtained there. On the above facts, which are undisputed, the court instructed the jury that the plaintiff was entitled to recover, but restricted the recovery to compensatory damages for injury to plaintiff's feelings resulting from the humiliation of being unlawfully driven from the train.

The plaintiff testified as a witness on the trial as follows: "When conductor stopped train between Pike Lake and Topside, he acted pretty cranky and overbearing, as he would just as leave throw me off as not. He informed me that his instructions were to charge twenty-five cents extra, and he would have to charge me that, or I would have to get off. Conductor told me to hurry up; put his left hand on my shoulder, and shoved me off the car. He pushed me hard enough so I came pretty near going off head first down the slide. . . . I was put off the train on a fill about ten feet high, amid timber and barren lands. . . . The car was quite full of people. . . . Saw people laughing at what occurred; had their heads out of the window, and were laughing." Some of the above testimony was controverted by the conductor and brakeman of the train.

The jury assessed plaintiff's damages at $300. The court denied a motion for a new trial, one of the grounds of which was that the damages were excessive. The defendant appeals from the judgment against it, entered pursuant to the verdict.

For the appellant there was a brief by *Catlin & Butler* and *Carl C. Pope*, attorneys, and *Tilden R. Selmes*, of counsel, and oral argument by *Mr. Pope*. They contended, *inter alia*, that the regulation authorizing the charge of

twenty-five cents is reasonable and valid. *Hilliard v. Goold*, 34 N. H. 230; *Chicago, B. & Q. R. Co. v. Parks*, 18 Ill. 460; *Yorton v. M., L. S. & W. R. Co.* 54 Wis. 234; *Ellis v. Mil. City R. Co.* 67 id. 135; *Plott v. C. & N. W. R. Co.* 63 id. 511; Bishop, Non-Cont. Law, sec. 1080. When passengers are afforded a reasonable opportunity to purchase tickets and fail to do so, they must submit to pay the extra fare or be expelled from the train. *Du Laurans v. St. P. & P. R. Co.* 15 Minn. 49; *St. Louis, A. & T. H. R. Co. v. South*, 43 Ill. 176; *Evans v. M. & C. R. Co.* 56 Ala. 246, 28 Am. Rep. 771; 1 Redf. Railways (6th ed.), 99. The plaintiff had a reasonable opportunity to purchase a ticket at Superior, and knew that if he should desire to go beyond Pike Lake he could not purchase a ticket there. When he failed to get off at Pike Lake, therefore, he was in the same position as any other passenger upon the train without a ticket when he might have procured one. *Chicago, B. & Q. R. Co. v. Parks*, 18 Ill. 460; 1 Redf. Railways (6th ed.), 97. It is the right and duty of a conductor to eject a passenger refusing to pay fare in accordance with the reasonable rules of the company. *Yorton v. M., L. S. & W. R. Co.* 54 Wis. 234; *Hibbard v. N. Y. & E. R. Co.* 15 N. Y. 455; *Townsend v. N. Y. C. & H. R. R. Co.* 56 id. 295; *Ellis v. Mil. City R. Co.* 67 Wis. 135; *Plott v. C. & N. W. R. Co.* 63 id. 511, 516. Sec. 1818, R. S., does not make it unlawful to put off a nonpaying passenger at any safe and convenient place. *Toledo, W. & W. R. Co. v. Wright*, 68 Ind. 586, 34 Am. Rep. 277–283; *Jeffersonville R. Co. v. Rogers*, 28 Ind. 1; *S. C.* 38 id. 116; *Hall v. M. & C. R. Co.* 15 Fed. Rep. 57, 68.

For the respondent the cause was submitted on the brief of *A. M. Taylor.* He argued, among other things, that where no opportunity is furnished for purchasing a ticket, no rebate or penalty can be lawfully imposed. *McGowen v. Morgan's L. & T. R. & S. S. Co.* 41 La. Ann. 732; *Atchi-*

*son, T. & S. F. R. Co. v. Dwelle,* 44 Kan. 394; *Poole v. N. P. R. Co.* 16 Oreg. 261; *State v. Hungerford,* 39 Minn. 6.

LYON, C. J.   The court properly directed a verdict for plaintiff, for two reasons: (1) The plaintiff was expelled from the cars away from a usual stopping place, and not near a dwelling house.   Sec. 1818, R. S., provides that, "if any passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage off the cars, on stopping the cars and using no unnecessary force, at any usual stopping place, or near any dwelling house, as the conductor shall elect."   We are of the opinion that by necessary implication this statute prohibits the expulsion of a passenger from the cars for nonpayment of fare at any place other than at one of the places mentioned in the statute; hence, in any event, the plaintiff was unlawfully expelled from the cars.   A contrary rule was laid down in *Toledo, W. & W. R. Co. v. Wright,* 68 Ind. 586, but we cannot adopt it. If it was lawful, under common-law rules, to expel a passenger from a public conveyance at any point the carrier might choose, for nonpayment of fare, we must hold, against the rule of the Indiana case, that the statute is restrictive of that right, and confines its lawful exercise to the points specified therein.   This is substantially the construction given the statute in *Patry v. C., St. P., M. & O. R. Co.* 77 Wis. 218.   Indeed, any other construction would render the statute practically inoperative and useless.   (2) Under the testimony the plaintiff undoubtedly had the rights of a passenger who went upon the train at Pike Lake, intending to go to Topside.   He could not obtain a ticket at Pike Lake, and must necessarily pay his fare on the train.   In such case the adjudications of the courts seem quite uniform that no extra fare can lawfully be charged, although the carrier may agree to refund, at some other place and time,

the excess thus exacted beyond regular rates. The object of exacting more than usual rates when payment is made on the train is to induce passengers to purchase their tickets at the stations. For obvious reasons it is a great protection to railway companies if all fares are paid to station agents and tickets issued therefor to be taken up by conductors on the trains, and the courts will uphold all reasonable regulations to that end; but it cannot justly be said that it is reasonable to require the passenger to pay more than regular rates on the train, even though a process be created by which he may at some future time get back such excess, unless the passenger has first had an opportunity to purchase a ticket at the station from which he starts, which, as we have seen in this case, was Pike Lake. It is said plaintiff might have purchased a ticket at Superior to Topside in the first instance. This is true; but when he purchased his ticket he did not intend to go to Topside at all. There is no rule of law or demand of public policy which required him to decide irrevocably when he purchased his ticket where he would leave the train; hence he was a passenger under his ticket from Superior to Pike Lake, and a passenger without a ticket from Pike Lake to Topside, and the railroad company did not furnish him with the means to obtain a ticket at Pike Lake. Because it did not, we must hold that the requirement that plaintiff should pay twenty-five cents more than the usual fare was illegal, and his failure to pay the same was no legal justification for expelling him from the cars.

The only other question is, Were excessive damages awarded the plaintiff? The jury assessed the plaintiff's damages at $300. It must be conceded that this is a very liberal allowance, and we should be better satisfied with the verdict had a somewhat less sum been awarded. Yet the damages allowed, although compensatory only, and confined by the court to injury to the feelings of the

plaintiff, are entirely unliquidated, and the amount thereof necessarily rests largely in the good judgment of the jury. The amount here awarded is not, under the circumstances, so large that we can say the verdict must have been the result of passion, prejudice, or undue influence, and there is nothing else in the case which impeaches the impartiality of the jury or the fairness of the verdict. The case is very much like that of *Wightman v. C. & N. W. R. Co.* 73 Wis. 169. In that case the injury was no greater, nor essentially different, from that suffered by plaintiff in this case, and the same amount of damages was awarded. We there reached the conclusion (as we do here) that, under repeated rulings of this court, we could not say such damages were excessive.

*By the Court.*— The judgment of the circuit court is affirmed.