WALTER W. LANKFORD v. SOUTHERN RAILWAY COMPANY.

(Filed 27 May, 1914.)

**Carriers of Passengers—Fares for Children—Expulsion from Train— Return of ·Ticket—Damages.**

Where a conductor has taken up the ticket of a person travel- ing with his child for whom a half ticket is required, but has not been purchased, and who is unable to pay the fare of the child with the extra fare allowed when a ticket has not been regularly purchased, his right to put the child, being *non sui juris*, off the train is dependent upon the return of the ticket he has collected from the father, or its equivalent, and if he acts without having done this, the expulsion is unlawful, and the railroad company is responsible in damages.

APPEAL by plaintiff from *Harding, J.,* at December Term, 1913, of GASTON.

Civil action to recover damages for an alleged wrongful ex- pulsion from defendant's passenger train.

At the close of plaintiff's testimony, on motion, there was judgment of nonsuit, and plaintiff, having duly excepted, ap- pealed.

*S. J. Durham, N. F. McMillan, and Mangum & Woltz for plaintiff.*
· *C. B. Mason and O. F. Mason for defendant.*

HOKE, J.   There was evidence on the part of plaintiff tend- ing to show that plaintiff was a resident of King's Mountain, N. C., and had a sick wife in the hospital at Gastonia, and, on 22 September, 1912, having received message that his wife was sinking, and that she wished him to come and bring their chil- dren to see her, he got on the train at King's Mountain, with his little girl 8 years of age and the boy 5 years; that he bought a full ticket for himself to Gastonia and a half ticket for the little girl, but did not have any for the little boy, under the im- pression that he was carried free till the age of 6, and that, after leaving King's Mountain, the conductor came through, took up the tickets of plaintiff and the little girl and demanded half fare

for the little boy from King's Mountain to Gastonia, 15 cents, and also 15 cents extra for having failed to purchase a ticket, and said he would have plaintiff expelled from the train at Bessemer, the next station, unless both the fare and the extra charge were paid; that plaintiff only had 15 cents available for the regular fare, and told the conductor so, and the conductor was called, who came, spoke very roughly, telling plaintiff he would be ejected at the next station unless the fare and extra charge were paid; that, when they reached the station, the conductor again, in a rough manner, ordered plaintiff to leave the train. Plaintiff, telling him of the sick wife, got off with the child, and asked the conductor to allow him time to buy a ticket for the child through from King's Mountain to Gastonia with the 15 cents that he had, this being the half fare between the two points; that no one was at the station to sell a ticket, and while plaintiff was endeavoring to find some one the train moved forward, leaving plaintiff and the little boy at Bessemer, 7 or 8 miles from Gastonia; that plaintiff had no money to hire a team, and went to a neighbor, who took him and the child part of the distance to Gastonia and the rest he walked; that the wife was unconscious when they reached her, and died without recognizing either him or the child.

Upon these, the controlling facts as presented by plaintiff's witnesses, we are of opinion that the order of nonsuit must be set aside and the cause tried by a jury.

It has long been the recognized principle in this State that a common carrier by railroad may impose an extra charge for failure on the part of a passenger to procure a ticket, and, when proper facilities have been afforded a reasonable time before a train leaves its station, that the passenger who wrongfully refuses to pay such extra charge may be expelled from the train (*Ammons v. R. R.*, 138 N. C., 555, and cases cited), a position now directly sanctioned by our statute, Revisal, 2618; and the same section also provides, among other things, that children between the ages of 5 and 12 may be charged half fare. Authoritative decisions on this subject are to the effect that when there is a wrongful failure or refusal to pay fare on the part or

in behalf of an infant passenger, who is *non sui juris,* the parent or custodian having such infant in charge and who is responsible for the fare may, ordinarily, be expelled from the train with the child, unless the regular fare is paid, including the extra charge when the same has been properly imposed; but, while this right, allowed from a humane consideration for the safety of the infant, is very generally recognized, and though there may be no default on account of the adult himself in this respect, many of these cases also hold that, where the adult has paid fare to his destination and the same has been received by the company, the right to expel him from the train by reason of the failure or refusal to pay on the part of the child does not arise until the company or its agents, the conductor or other, etc., has returned or made offer to return the unearned portion of the fare or given a stop-over check or other written acknowledgment which will enable the adult to proceed on his trip at a later time. *Braun v. The Northern Pacific Ry.,* 79 Minn., 404; *Wardwell v. The Chicago, etc., Ry.,* 46 Minn., 514; *The Lake Shore and Michigan Ry. v. Orndorff,* 55 Ohio St., 589; *Hanna v. Electric Ry.,* 45 N. Y. App., 437; *Bland v. South. Pac. Ry.,* 55 Cal., 570; 6 Cyc., p. 559.

In *Braun's case, supra,* the doctrine is stated as follows: "It remains to be considered whether the failure of defendant to return to plaintiff his ticket, or its unearned value, renders it liable to him in this action. The complaint is broad enough to sustain such recovery, and we believe the question is ruled by the case of *Wardwell v. Chicago, etc., Ry.,* 46 Minn., 514, 24 Am. St. Rep., 246, 49 N. W., 206. It is there held that such failure to return the fare actually paid by the passenger renders the company liable. We quote from the opinion in that case, at page 517: 'As precedent to the right to expel him from the train, he (the conductor) should have returned to plaintiff what he was entitled to of the money, and until he did that, he had no right to put him off. It is true, he returned it to him immediately after the expulsion. But the wrong had then already been committed, and could not be repaired by doing what ought to have been done before the expulsion.' It was not

the duty of plaintiff to demand the return of his ticket before leaving the train; but, on the contrary, it was the duty of the conductor of the train to return it, or its equivalent, as a condition precedent to his right to eject him. *Bland v. Southern Pac. R. R. Co.,* 55 Cal., 570, 36 Am. Rep., 50. Nor is it important or material to the right of action that a ticket was subsequently furnished him, with which he continued his journey. *Wardwell v. Chicago, etc., R. R. Co.,* 46 Minn., 514, 24 Am. St. Rep., 246, 49 N. W., 206. It is not disputed but that defendant's conductor or collector took up plaintiff's ticket, returning to him a conductor's check; and it is not claimed that the original ticket was returned, or offered to be returned, before the boy was ejected. If, as suggested by a member of the Court, the original ticket had been canceled by the conductor, and thereby rendered worthless and of no value as an evidence of plaintiff's right of passage on a subsequent train, then it was the duty of defendant to return in lieu thereof its unearned value, or some evidence or token which would answer every purpose of the ticket uncanceled."

The facts in evidence show that, in the present case, plaintiff, the father, had paid his own fare to Gastonia, and the ticket had been taken up by the conductor or collector, and a perusal of the record fails to disclose that there was any offer or suggestion that the unearned portion of the fare be returned to him at the time he was made to leave the train at Bessemer, and, under the cases cited, which we think express the correct principle applicable, we are of opinion, as stated, that the judgment of nonsuit must be set aside.

Reversed.