# BROWN v. TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY.

[No. 8,581. Filed December 16, 1915. Rehearing denied June 8, 1916. Transfer denied December 20, 1916.]

1. CARRIERS.—*Carriage of Passengers.—Action for Wrongful Ejectment.—Fares.—Evidence.*—Where a carrier's published schedules of fares, as filed with the Railroad Commission, fixed the fare from A to B at ten cents, from A to C at twenty cents, and from B to C at five cents, the schedules not mentioning two stops between B and C, known as stops Nos. 8 and 9, and when passengers boarded trains at other than established fare points, authorized the collection of five cents to the first fare point plus the fare from the first fare point to the destination, while a supplementary schedule fixed the fare at fifteen cents between A and stop No. 8, but fixed no fare between such stop and any other station, such schedules did not definitely or certainly establish the fare between stop No. 9 and B, so that, in an action against the carrier for wrongful ejectment, evidence was admissible to show the fare actually charged by defendant between such points on the day in question for the purpose of ascertaining the interpretation and construction placed on the schedules by the carrier. pp. 335, 336.

2. EVIDENCE.—*Best and Secondary Evidence.—Railroad Fares.—Schedules Filed With Railroad Commission.*—A carrier's published schedules of fares as filed with, and approved by, the Railroad Commission, such body being invested with control thereof, are the best and, therefore, the proper evidence by which to prove the established fares between stopping places on the carrier's line. p. 336.

3. CARRIERS.—*Carriage of Passengers.—Action for Wrongful Ejectment. — Evidence. — Admissibility. — Res Gestæ.* — In an action against an interurban railroad for wrongful ejectment, the statement made to plaintiff by the conductor on the occasion of the occurrence involved, concerning fares charged by defendant, was admissible as part of the res gestæ. p. 337.

4. CARRIERS.—*Carriage of Passengers.—Action for Wrongful Ejectment.—Passenger Fares.—Splitting up Journey.—Instructions.—Statutes.*—Section 1 of the act of 1911 (Acts 1911 p. 545), §§3,

cl. g, 7, 13 and 14, cls. a, b, of the act of 1907 (Acts 1907 p. 454) only make it unlawful for a carrier to charge or collect any rate or tariff different from that fixed in the tariff schedule or by the use of any special rate, rebate, etc., to demand or receive from any person a greater or less fare than it charges any other person for like transportation, and forbids the acceptance by any person or firm of a rebate, but such statutes do not prohibit a passenger from making his journey by stages, regardless of his motive for so doing, and when a carrier offers the traveling public both a local and a through tariff in the duly published schedules, and the sum of the local fares between any two points on the carrier's line is less than the through rate, a passenger, although he cannot elect at the commencement of his journey to pay the sum of the local fares for a through passage, may make his journey by stages in order to get the benefit of the local tariffs, and it is the duty of the carrier to accept a fare to any regular stopping point that a passenger may indicate; hence, in an action against an interurban railroad for wrongful ejectment instructions stating that one becoming a passenger is obligated to pay the through fare to the final destination intended when boarding a car is erroneous as making the passenger's original intention controlling, and depriving him of the right to change his destination. pp. 337, 346.

5. CARRIERS. — *Carriage of Passengers.* — *Passenger Fares.*—*Local and Through Fares.—Duty of Carrier.*—Where a passenger on an interurban railroad when first approached by the conductor indicated a desire to contract for a through passage to a certain station on the carrier's line, but upon learning the amount of the through fare expressed his intention to contract for transportation to an intermediate stop and tendered the fare to such point, the conductor should have received the same and carried him to such intermediate stop, even though the passenger's purpose was to obtain the benefit of the scheduled local fares, which aggregated less than the through fare to the destination originally named by him. p. 345.

6. CARRIERS.—*Carriage of Passengers.—Action for Wrongful Ejectment.—Splitting of Journey.—Evidence.*—Where a passenger on an interurban railroad has the right to make his journey by stages and to pay the local fares between the various stops, evidence, in an action for wrongful ejectment, that the passenger alighted at the point to which the first local fare covered his transportation is of no controlling importance, except as part of plaintiff's conduct tending to show that he stood on his right to take advantage of the local fares, which aggregated less than the through fare to his destination. p. 345.

7. CARRIERS.—*Carriage of Passengers.—Action for Wrongful Ejectment.—Trial.—Instructions.—Retention of Fare.*—A conductor on

an interurban car is not authorized to eject a passenger for failure to pay the proper fare while retaining the fare tendered by the passenger, so that, in an action for wrongful ejectment, instructions purporting to state facts which would justify defendant in ejecting plaintiff from its car, but ignoring evidence tending to prove that the conductor had received and retained the fare tendered by plaintiff, are erroneous. p. 346.

8. CARRIERS.—*Carriage of Passengers.—Local and Through Fares. —Selection by Passenger.—Discrimination.*—Where a railroad's published schedule of fares offers to the traveling public two different fares, one a local and the other a through fare, each having the same legal sanction and authority, a passenger may elect which fare he will take, and, where the carrier permits one passenger to contract for a through passage at the through rate, and another for local passage at the local rate, it is not guilty of discrimination, although the aggregate of the local fares between two points on the carrier's line may be less than the through fare for the same journey. p. 348.

From Marion Superior Court (87,704); *Charles J. Orbison,* Judge.

Action by James A. Brown against the Terre Haute, Indianapolis and Eastern Traction Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*M. M. Bachelder* and *E. E. McFerren,* for appellant.
*W. H. Latta,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor in an action brought by appellant to recover damages for an alleged illegal ejectment from appellee's car. The issues of fact were tendered by a complaint in one paragraph and an answer in two paragraphs, the first of which was a general denial.

The only error assigned and relied on for reversal is the overruling of appellant's motion for new trial. The grounds of this motion insisted upon as presenting reversible error are those challenging the sufficiency of the evidence and the action of the trial court in excluding certain evidence, and in giving certain instructions.

We indicate the averments of the complaint and special answer necessary to an understanding of the questions thus

presented by the appeal. The averments of the complaint pertinent to said questions are, in substance, as follows: On September 5, 1911, at Ben Davis, Indiana, where one of appellee's . cars stopped to take on passengers, appellant boarded said car with the desire to be carried from said point to the terminal station at Indianapolis, and to that end tendered to appellee's conductor on such car the sum of. . . .cents, the usual and regular fare between said points; that such conductor refused to accept said fare, and wrongfully and maliciously refused to permit appellant to travel on said car, and seized him in a rude, insolent and violent manner and attempted to eject him.

The averments of the special answer pertinent to said questions are in substance as follows: On September 5, 1911, appellee had in force established tariffs and schedules which it had filed with the Railroad Commission of this State, and was then charging and collecting the fare provided in such schedules, to wit, the fare provided in "Local and Interdivision Passenger Tariff No. 12," effective August 24, 1911, with "Supplement No. 1" thereto, effective August 31, 1911; that the first station on appellee's line of road, west of Ben Davis, is stop No. 8, and the next stop west is stop No. 9; that by the terms of said tariff and rate sheet the rate of fare between stop No. 8 and Indianapolis, in either direction, was fifteen cents; and under the provisions of said tariff and schedule conductors on appellee's cars were authorized and required to collect from points not shown in tariff schedules to fare points shown thereon, five cents; that stop No. 9 was not a fare point mentioned in said passenger tariff No. 12 or in supplement No. 1, or in any tariff regulation or schedule then in force on said line of road; that under said tariff schedule appellee's conductor was required to collect of all through passengers from stop No. 9 to Indianapolis, twenty cents, to wit, five cents from stop No. 9 to the first fare point which was stop No. 8, plus fifteen cents, the schedule fare from stop No. 8 to

Indianapolis. That the distance from Indianapolis to stop No. 8 is 8.16 miles and to stop No. 9, 8.52 miles. That appellant boarded appellee's car at stop No. 9 and announced to the conductor that he desired to go to Indianapolis, and appellee *"alleges the fact to be that (appellant) then and there became a through passenger upon said car from said Stop No. 9 to the City of Indianapolis, and became obligated under said tariff to pay to this defendant for his said carriage the said sum of twenty cents."* That appellant upon boarding said car at stop No. 9 tendered to appellee's conductor the sum of fifteen cents as and for his fare to Indianapolis, and was informed by such conductor that the fare was twenty cents; that the conductor refused to accept fifteen cents and appellee refused to pay twenty cents. That for the purpose of avoiding his obligation to pay the latter sum and without any good faith or intention to be a passenger to Ben Davis, but solely for the fraudulent purpose just indicated, appellant alighted at Ben Davis and immediately reboarded the same car and thereafter tendered to said conductor the sum of fifteen cents to be carried to Indianapolis; that the conductor again refused said sum and demanded twenty cents, and informed appellant that he must either pay such sum or get off the car; that appellant refused to do either, and thereupon the conductor and motorman attempted to eject appellant when another passenger on said car paid to such conductor five cents and appellant paid his fifteen cents, after which no further attempt was made to eject appellant; that such attempted ejectment was made without malice, violence or undue force and was made in the manner and for the purpose herein alleged.

The facts disclosed by the evidence pertinent to said questions presented by the appeal are, in substance, as follows: It was agreed that exhibits 1 and 2 (these were the tariff schedule and supplement sheet referred to in appellee's answer, *supra*) "taken together constitute the duly author-

ized rates of fare and passenger tariff'' duly filed with the Railroad Commission of the State of Indiana, in force and effect from the time shown therein up to and including September 5, 1911. Tariff schedule No. 12, effective August 24, 1911, shows the following mileage and fares between points here involved, viz.: From Indianapolis to Ben Davis, six miles, fare ten cents; from Indianapolis to Bridgeport, the first station shown west of Ben Davis, nine miles, fare twenty cents; from Ben Davis to Bridgeport, three miles, fare five cents. This schedule makes no mention of either stop No. 8 or stop No. 9, both of which are between the last named stations, but, under heading ''Plan for Collecting Fares and Tickets,'' authorizes conductors to ''collect five * * * cents to first fare point plus fare shown in tariff from the fare point to destination. Ben Davis and Bridgeport are the only stops west of Indianapolis, here involved, which are referred to or mentioned as fare points in said schedule No. 12, and under such schedule the fare to Indianapolis from any point east of Bridgeport and west of Ben Davis could be but fifteen cents; that is, the conductors could collect five cents from such non-fare point to Ben Davis, and ten cents, the published fare, from Ben Davis to Indianapolis.

Supplement No. 1 to said tariff schedule No. 12, referred to in the answer as having gone into effect August 31, 1911, provided that, ''The rate between Indianapolis and stop 8, either direction, will be fifteen * * * cents.'' Under this supplement stop No. 8 became a fare point for the purpose of determining the fare to and from such point and Indianapolis, but no fare or tariff was fixed between such point and any other station on appellee's line, nor was there any other change or modification of the tariff fares fixed by tariff schedule No. 12. The fare from Ben Davis to Bridgeport still remained five cents. Under tariff No. 12 and supplement the fare for through passage from stop No. 9 to Indianapolis became twenty cents. This is so because stop

No. 9 is not a fare point, and hence, under schedule No. 12, a fare of five cents should be collected to the first fare point, which under the supplement is stop No. 8, and the fare between stop No. 8 and Indianapolis is by said supplement fixed at fifteen cents.

It should be stated, also, in this connection, that the exact distance between Indianapolis and the stops herein involved is admitted by appellee in its special answer and brief to be as follows: From Indianapolis to points respectively, as follows, viz.: to Ben Davis 6.47 miles; to stop No. 8, 8.16 miles; and to stop No. 9, 8.52 miles. For the purposes of fixing tariffs in accord with the two-cent mile law (§5196 Burns 1914, Acts 1913 p. 156) said distances and tariffs were, therefore, as before indicated herein, and such tariffs, as fixed by said schedule, are within the provisions of said law. It will also appear from the above figures that the distance between Ben Davis and stop No. 9 is only 2.05 miles, and hence the rate between such stops, to be within the two-cent mile law, could not exceed five cents.

The oral evidence affecting the questions involved is as follows: Appellant, on direct examination, testified, in effect, that on September 5, 1911, he got on one of appellee's cars at Ben Davis to go to Indianapolis; that when the conductor came to collect his fare he (appellant) tendered him fifteen cents—a dime and nickel—and the conductor demanded another nickel, which he (appellant) refused to pay; that the conductor then pulled the bell rope, stopped the car and proceeded to eject him; that after some struggle between them the conductor called to his aid the motorman; that during the time the conductor was trying to put appellant off the car he (the conductor) retained the fifteen cents given him by appellant; that a fellow passenger tendered the extra nickel demanded by the conductor after which appellant was released and permitted to go on to Indianapolis.

Appellant's answers on cross-examination are, in part,

to the following effect: "Stop No. 9 is called Riggins' Crossing. It is just a private crossing for the farm that it runs through. There is a waiting station, but no agent there. Stop No. 8 is between stop No. 9 and Ben Davis. I got on the car at stop No. 9 and the conductor came for my fare. I offered him fifteen cents to go to Indianapolis and the conductor said it was not enough. I told him to take out to Ben Davis, and in place of taking out any, he put it all back in my hand and said, 'I will collect later,' and was gone before I had time to say anything. That is all the conversation I had with him prior to the car reaching Ben Davis. Just before the car stopped at Ben Davis he came forward and slapped me on the shoulder and says, 'Ben Davis, feller; get off,' in rather a rude manner, one that would attract the attention of all the passengers in the car. I was sitting in the front part of the rear coach. I got up and got off, just as he demanded and got down on the platform. When the Ben Davis passengers got on I got on, and we hadn't gone far from Ben Davis, perhaps a mile or so, when the conductor came to me for my fare; I was then in the smoker. I gave him a dime and a nickel. I knew that the fare from Ben Davis to Indianapolis was ten cents, and yet I tendered him a dime and a nickel. I offered him the extra nickel because my nerves were unstrung; after he asked me to get off the car, I knew I was a passenger from that station. I might have thought the nickel was the fare from stop 9 to Ben Davis."

Appellant's statement, in its essential features, is corroborated by most of the witnesses and contradicted by none except the conductor, who testified, in part, to the following effect: "After Mr. Brown got on the car at stop 9 I went to get his fare and he handed me fifteen cents. I says 'Where to?' He says, 'Indianapolis.' I says, 'It is twenty cents to Indianapolis,' and he made some remark— 'It is not right,' or something—and somebody else says to him, 'Pay to Ben Davis.' Some passengers got on at stop

8 and I handed his dime and nickel back, and I said, 'I will get your fare after while.' That is all that took place between stop 9 and Ben Davis. When we approached Ben Davis, I did not address anyone personally. I said, 'Ben Davis!' and called it twice. I positively did not punch appellant. When the car stopped at Ben Davis appellant started to get off the car, and went down to the first or second step and turned around and went back in, and walked up to the smoker. I asked him for the fare and he held out fifteen cents to me. I says, 'It is twenty cents from where you got on to Indianapolis,' and he says, 'I will not pay it.' I says, 'You will have to pay it or get off.' He said 'I will not get off and you cannot put me off.' I took hold of him and started to take him to the front end of the car because I could not get him through the back end of the car. The motorman came and opened the door. At this time some one else paid me a nickel and appellant gave me fifteen cents. I cut a receipt out and gave it to him, and did not say anything else to him. When I got to Ben Davis I hollered out twice right up close to the smoker, 'Ben Davis!'—had the smoker door open. I was almost at the side of Mr. Brown. If I touched him, I did so accidentally and did not know it. I positively did not say: 'Ben Davis, fellow; get off.' When the other man gave me the nickel, he had the fifteen cents ready, and I took the fifteen cents.''

It will be seen, from the issues tendered and the evidence pertinent thereto above set out, that one of the disputed questions in the trial court was whether appellant, when appellee's conductor attempted to eject him, had paid or tendered a fare which entitled him to be carried on appellee's car to Indianapolis. In determining such question, under one phase of the case, it was important for the jury to know the amount of the fare for the distance between stop No. 9 and Ben Davis on the day in question. As pertinent to this question, appellant

336    APPELLATE COURT OF INDIANA,

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

offered to prove by one or more witnesses the fare charged
between said stops on the day in question by conductors
on appellee's cars, and offered to prove by appellant that
the conductor on the car on which appellant took passage
stated to appellant on the occasion in question that the
fare from stop No. 9 to Ben Davis was five cents. An
objection to this evidence was sustained, and it is insisted
by appellee that such action of the court was proper
because the question of passenger fares or tariffs is now
under the control of the Railroad Commission and that
proof of such fares can only be made in the regular way,
viz., by the published schedules of fares as filed with, and
approved by, such commission; that tariffs so fixed cannot
be attacked collaterally, but can be adjudged illegal and
improper only by direct action brought for such purpose.
In support of this contention appellee cites: *Southern
Ind. R. Co.* v. *Railroad Commission* (1908), 172 Ind. 113, 87
N. E. 966; *State, ex rel.* v. *Florida, etc., R. Co.* (1909), 58
Fla. 524, 50 South. 425.

The legal principles for which appellee contends are, we
think, sound and supported by authority. The general
rule that the published tariff schedules approved by
2.    such commission are the best, and hence the proper,
evidence by which to prove such tariffs, has applica-
tion to those cases where the schedules or tariffs so filed and
published fix the fare between the points involved in the
litigation. We have already indicated that, in the instant
case, the fare between stop 9 and Ben Davis is not
1.    certainly or definitely fixed by appellee's schedule of
fares effective on the day in question. True, it might
be inferred from such schedule that the fare between such
points was five cents, because of the presumption that such
tariff would be made to conform to the two-cent fare law,
and, because also, that the tariff between Bridgeport
(which is west of Ben Davis) and Ben Davis is fixed by
such schedule at five cents, and hence that the fare from an

intermediate point would not be a greater amount. However, in view of the fact that the schedule, here involved, does not fix the fare between stop No. 9 and Ben Davis, or at least does not expressly fix such fare, but leaves it in doubt and uncertainty, we think that the jury trying the case was entitled to know the fare actually charged and collected by appellee between said points, not for the purpose of contradicting or disputing said tariff schedule, but for the purpose of ascertaining the interpretation and construction placed thereon by appellee. For this reason the offered evidence was proper and should have been

3. admitted. The offered statement of appellant as to what the conductor stated to him on the occasion in question was, in any event, competent as a part of the *res gestæ.*

It is, however, contended by appellee, in effect, that inasmuch as the through fare between stop No. 9 and Indianapolis was fixed by the tariff schedule as twenty cents, the question of appellee being justified in its attempt to eject appellant from its car, in its last analysis, turns solely on the question whether appellant was a passenger from stop No. 9 or from Ben Davis when the attempt to eject him was made, and hence that the exclusion of said evidence was harmless in any event. For reasons that will appear later in this opinion we do not agree with this contention. We next consider the error predicated on the instructions given. Of those challenged No. 5, originally given, and No. 4 of the reinstructions, given by the court after the jury had

4. been once instructed and sent to their room, are, we think, the most vulnerable. The first paragraph of instruction No. 5, which is particularly objected to, and said reinstruction No. 4 in its entirety, are as follows:

"No. 4. The court instructs the jury that if the plaintiff got on the car at stop No. 9 on the Brazil Division, and desired to ride to Indianapolis, and that it was his inten-

338    APPELLATE COURT OF INDIANA,

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

tion when he boarded the car to go to Indianapolis, on that car, he then and thereby became obligated to pay to the defendant the fare which it was entitled to charge under the schedule and tariff then in force, and which, under the evidence in this case, was twenty cents. And if the jury find that the said Brown tendered to the conductor of said car fifteen cents as and for his fare to the City of Indianapolis, and said conductor demanded twenty cents, then said Brown could not evade the payment of the through fare from stop No. 9 to the City of Indianapolis by getting off of said car at Ben Davis and getting back on the car, but he was under a continuing duty and obligation throughout the entire distance from stop No. 9 to Indianapolis to pay the through fare between said points, and even if you find that the conductor of the car called Ben Davis and told the plaintiff to get off and the plaintiff did get off, yet if you find from the evidence that the plaintiff continually intended to be a through passenger to Indianapolis, on that car, and never in fact relinquished his intention to do so, but his getting off at Ben Davis was merely to attempt to gain an advantage in fares and he did not have a good faith intention of being a passenger to Ben Davis, then the court instructs you that unless the plaintiff at some time paid or offered to pay to the conductor twenty cents, the conductor had a right to eject him, using no more force than was necessary to do so.''

''No. 5. The court instructs the jury that if the plaintiff got on the car at stop 9, on the Brazil Division, and desired to ride to Indianapolis, and that it was his intention when he boarded the car to go to Indianapolis on that car, he then and thereby became obligated to pay the defendant the fare which it was entitled to charge under the schedule and tariff then in force, and which under the evidence in this case, was twenty cents. * * *''

It is insisted by appellant that these instructions make the question of his original intention as to destination con-

NOVEMBER TERM, 1916. 339

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

trolling, and that by them the jury was told that if, when he entered appellee's car at stop No. 9, he intended to go to Indianapolis, he then became obligated to pay the through tariff between said points though, after entering the car, he changed his intention and sought and offered to pay his fare to an intermediate stop.

Appellee insists that said instructions, when read in their entirety, do no more than tell the jury that, if appellant in fact intended to be a *through passenger* from stop No. 9 to Indianapolis, he was required to pay a *through fare.* The importance of this contention is particularly dwelt upon, and the legal questions involved therein exhaustively and ably presented by appellee in its brief.

The first paragraph of instruction No. 4 and that part of No. 5 above quoted, standing alone, are open to appellant's criticism. Assuming, however, that the instructions, when read in their entirety, could not have misled the jury or have been misunderstood by it as to the question of appellant's right to, in good faith, change his destination after becoming a passenger, they, in any event, do more than appellee concedes. They, in effect make the question *of intended final destination* controlling, and as such question is important and must necessarily arise on another trial of the case it should be now determined and decided.

As affecting said question, appellee contends that the undisputed evidence shows that appellant entered appellee's car at stop No. 9 then intending, and continuously thereafter intending, Indianapolis as his final destination, and that he thereby became a through passenger from stop No. 9 to Indianapolis, and became obligated to pay the through fare between said points as fixed by appellee's tariff schedule; that appellant's tender of fare to Ben Davis and his alighting at such stop was a subterfuge and trick resorted to for the purpose of avoiding the payment of such through fare, and hence did not operate to separate his journey into stages, whereby he could obtain any advantage of the local

fare between such stops, and did not relieve him from
paying the regular fare from the place of original entry
on the car to his final destination.   In support of this con-
tention, it is argued that, inasmuch as interurban roads
operate local cars, stopping at frequent intervals at country-
road crossings, separated by fractions of miles, it is impos-
sible for such roads to comply with the two-cent fare law,
and at the same time make the sum of the local fares
equal in all cases the through fare; that, in view of this
fact, the law contemplates, and public policy requires, that
a through passenger shall pay the through fare and that
the obligation to pay such through fare continues, unless,
after getting on the train, such passenger, in good faith,
makes up his mind to stop at an intermediate point; that
a stop at some intermediate point and a payment, or tender,
of fare to such point, made for the sole purpose of obtain-
ing the advantage of a lower local tariff, and then board-
ing the same car to be carried to the destination originally
and always intended, is a trick and device of the passenger
by which he attempts to do by indirection that which he
may not directly do, and hence that such practice should
not be given the sanction of the courts; that an acceptance
by the carrier of the local fare from the passenger who
thus attempts to evade the payment of the through fare
would be a violation by it of the letter and spirit of the
Railway Commission Law (§1, cl. b) of an act approved
March 6, 1911 (Acts 1911 p. 545, 547, *post*) which would
subject it to the penalty therein provided.

As supporting this contention, appellee specially relies
on the following section of the statute: §1 of an act ap-
proved March 6, 1911, Acts 1911 p. 545, §5540 Burns 1914;
§3, cl. (g), of an act approved March 9, 1907, Acts 1907 p.
454, §5533 Burns 1914; §7, Id. p. 470, §5537 Burns 1908;
§13, Id. p. 478, §5543 Burns 1908; §§14, cls. (a) and (b),
Id. p. 481, §5544 Burns 1908.   These sections are too lengthy
to set out in this opinion.   It is sufficient to say that we

have examined them, and, in so far as they affect the questions under consideration, they do no more than make it *unlawful for the carrier* to charge, demand or collect, either directly or indirectly, any rate or tariff *different from that fixed in the tariff schedule* and, also provide against unjust discrimination, making it unlawful for such carrier or any of its agents, officers or employes ·by special rate, rebate, drawback, device, or other methods enumerated, to charge, demand, collect or receive from any person, firm or corporation *"a greater or less fare than it charges, demands, receives or collects from any other person, firm or corporation for like transportation under substantially similar circumstances and conditions."* A provision, similar to that last quoted, is made to apply to any person, his agent or employe, any member of a firm, or any corporation or any officer, agent or employe of such firm or corporation who intentionally accepts or receives such rebate, etc. Penalties are also provided for the violation of each of said several sections.

We find nothing in any of such sections indicating any intention of the legislature to prohibit the passenger, when two tariffs (one "local" and one "through") are published, from making his journey by stages, regardless of his motive for so doing.

The cases cited and relied on by appellee are, we think, easily distinguishable from 'the instant case. The case of *St. Louis, etc., R. Co.* v. *Waldrop* (1909), 93 Ark. 42, 123 S. W. 778, was a suit to recover from the carrier the penalty under a statute prohibiting the carrier from collecting from the passenger a greater fare than that permitted by the statute. It was held, and properly so we think, that it was the duty of the agent to know the correct tariff and that the mistake of the agent in such respect did not relieve the carrier from the payment of the penalty. The case of *Reynolds* v. *United States* (1878), 98 U. S. 145, 25 L. Ed. 244, simply announces the general principle that, where

342 APPELLATE COURT OF INDIANA,

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

every act necessary to constitute a crime is knowingly done, the crime itself is, in law, knowingly committed, that ignorance of fact may sometimes be taken as evidence of want of criminal intent, but not ignorance of the law.

The case of *Armour Packing Co.* v. *United States* (1908), 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681, involved a prosecution under the Elkins Act (Act Feb. 19, 1903, 32 Stat. at L. 847, ch. 708, U. S. Comp. St., Supp. 1907, p. 880). The packing company had been convicted in the district court of a violation of said act on a charge of obtaining from the Chicago, Burlington & Quincy Railway Company an unlawful concession of twelve cents per 100 pounds from the published and filed rate of that portion of the route between the Mississippi river and New York for transportation of the packing company's product from Kansas City to New York for export. The United States Supreme Court discusses the Elkin's Act in connection with the previous acts leading up to it, and holds in effect that the purpose and intent of the later act was to put all shippers on an equal footing and prevent discrimination in favor of or against any shipper and to "prohibit any and all means that might be resorted to to obtain or receive concessions and rebates *from the fixed rates duly posted and published*," and that any "device" or "method of dealing" by the carrier by which the forbidden result could be brought about, though not fraudulent was within the inhibition of the statute. (Our italics.) To the same effect is the case of *New York, etc., R. Co.* v. *Whitney Co.* (1913), 215 Mass. 36, 102 N. E. 366, 368, which holds that both shipper and carrier "are bound inexorably to follow *the rate published.*" (Our italics.)

In *Layne* v. *Chesapeake, etc., R. Co.* (1909), 66 W. Va. 607, 67 S. E. 1103, it was held that: "A passenger does not, however, lose his status as such by merely alighting at a regular station for exercise, for lunch or for any business not inconsistent with the pursuit of *the journey con-*

NOVEMBER TERM, 1916.        343

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

*tracted for.''* (Our italics.) To the same effect is the case of *Austin* v. *St. Louis, etc., R. Co.* (1910), 149 Mo. App. 397, 130 S. W. 385.

In our judgment none of these cases fit the facts of the case under consideration, and hence furnish little or no reason or support for appellee's contention. Indeed, some of these cases, by implication at least, are against appellee's contention in that they hold in effect that, in determining whether the statute in such cases has been violated by the carrier, the real question is whether a tariff *different from the published tariff* was charged or received, etc., or whether there had been discrimination in the collection of tariffs by giving a particular shipper a special *rate, rebate or drawback,* not given to other shippers under the same circumstances and conditions, in either of which events the statute would be violated, regardless of the method used by the carrier to obtain the forbidden result, and regardless of the question whether there was a fraudulent purpose and intent on the part of the carrier to obtain such result.

In the instant case there were two published tariffs, one a *local* and one a *through* tariff, offered by the carrier to the traveling public with the sanction and approval of the Railroad Commission. Such tariffs stood upon the same footing. They, each alike, had the approval of the commission, and were each the *legally published tariffs of such carrier,* open to acceptance by the traveling public. We do not mean by the last statement that the through passenger may choose to pay for through passage the sum of the local fares; but, if the sum of the local fares is less than the through fare, and the passenger desires to make his journey by stages in order to get the benefit of such local fare, we find nothing in the law that will prevent him from so doing. In such a case the agent of the carrier, whether at the ticket office window selling tickets, or the conductor on the car collecting fares, is under obligation, in the one case, to sell to the traveler the ticket which entitles him to trans-

344     APPELLATE COURT OF INDIANA,

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

portation to the destination for which he seeks to purchase a ticket, and, in the second case, to charge and accept a fare to such destination as the passenger may indicate, provided, of course, that the destination be one at which such car stops. Nor do we believe that public policy requires, or demands, the construction placed on such law insisted on by appellee, but, on the contrary, favors a construction in such case that will look to the actual transaction, the contract, or attempted contract, for passage rather than to the unexpressed, but intended final destination of the passenger. If the legislature had intended to prevent a through passenger from breaking his journey into stages in order to get the advantage of a local fare, it, by appropriate and apt language, could have so provided in the act in question, or, if the Railroad Commission in adopting the tariff in question had thus intended, it could have made the tariff so show, and to say that the acceptance by the carrier of its published tariff, under such circumstances, would be a trick or device by the carrier, resorted to for the purpose of discriminating in favor of the particular passenger which would render it subject to the penalty provided in either section of the act in question would, in our judgment, be a strained construction of the act wholly unwarranted by its language, and never intended or thought of by the legislature. If there could be said to be any device or trick on the part of the carrier, in connection with charging, demanding or receiving such a tariff, it would seem to have had its origin and inception in the promulgation of the two fares, and such fares having the sanction of the Railroad Commission, there is no reason for the carrier apprehending prosecutions for collecting and receiving the local tariff under the circumstances here indicated.

We have no doubt but that, under the tariff rates above indicated, as adopted and published by appellee, where a passenger has boarded one of its cars at stop No. 9, and

NOVEMBER TERM, 1916. 345

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

the conductor attempts to collect the fare of such passenger, if the passenger indicates a desire to go to Indianapolis, with no expressed desire or demand to take advantage of the local rate, and no offer to pay fare to the intermediate stop, such conductor is required to collect the through fare between stop No. 9 and Indianapolis, which is twenty cents; but this is not the question here presented.

It is true that appellee, after boarding the car at stop No. 9, when first approached by the conductor, indicated a desire to contract for through passage to Indianapolis; but,

5. upon learning the tariff for such through passage was twenty cents, he then indicated a desire to contract for passage and to pay fare to the intermediate stop— Ben Davis—and tendered the fare necessary to carry him to such stop. For the reasons herein stated, we think appellant was entitled, if he so desired, to change his place of destination regardless of his motive for so doing, and that the conductor should have received his fare when tendered and carried him to Ben Davis without further question. He did in fact carry him to Ben Davis, and under appellant's statement required him to get off there. The conductor denied this statement, but the motive prompting appellant to change his destination—whether he left the car at Ben Davis voluntarily or at the demand of the conductor—is not in our judgment of controlling importance. The fact that he got off at Ben Davis

6. was of no controlling importance, except as a part of appellant's conduct tending to show that he stood on his right to take advantage of the local rate and contract for passage to Ben Davis. In support of our conclusion see the following cases: *Kurtz* v. *Pennsylvania Co.* (1909), 16 Inters. Com. Com. Rep. 410; *Railroad* v. *Klyman* (1902), 108 Tenn. 304, 67 S. W. 472, 56 L. R. A. 769, 91 Am. St. 755; *Phettiplace* v. *Northern Pacific R. Co.* (1893), 84 Wis. 412, 54 N. W. 1092, 20 L. R. A. 483; *Chicago, etc., R. Co.* v. *Parks* (1857), 18 Ill. 460, 68 Am. Dec. 562; *Gulf,*

*etc., R. Co.* v. *Texas* (1907), 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540, and cases cited.

4.    For the reasons indicated, the instructions above set out, as well as some of those not indicated, incorrectly stated the law, and hence necessitate a reversal of the judgment below.

It should be further stated with reference to the instructions that some of them are open to the criticism that they attempt to state to the jury the facts which, if found 7.    by it, would justify it in finding that appellee had a right to eject appellant from its car, and ignore the element of appellee's receiving and retaining the fare tendered by appellant. The appellant testified that, after he got on the car at Ben Davis, appellee's conductor came to him for his fare and that he gave him fifteen cents; that the conductor had and retained this fare while attempting to eject him. The conductor denied this, but such question was one of fact to be determined by the jury, and should not have been ignored in an instruction which attempted to enumerate the facts which would authorize the conductor to eject appellant. The law would not authorize an ejectment by the conductor for failure to pay proper fare while the fare tendered was retained by such conductor. *Bland* v. *Southern Pac. R. Co.* (1880), 55 Cal. 570, 36 Am. Rep. 50; *Wardwell* v. *Chicago, etc., R. Co.* (1891), 46 Minn. 514, 49 N. W. 206, 13 L. R. A. 596, 24 Am. St. 246, 248-249; 6 Cyc 559, 560.

Our conclusion as to the instructions renders unnecessary a consideration of the other grounds of the motion for new trial. On account of the error predicated on the giving of the instructions indicated, the motion for new trial should have been sustained. The judgment below is therefore reversed, with instructions to the trial court to grant a new trial, and for such other proceedings as may be consistent with this opinion.

## ON PETITION FOR REHEARING.

HOTTEL, J.—Appellee in an able brief earnestly and vigorously insists that this court has erred in its original opinion, and that rehearing should be granted. It is urged that every railroad operating within the jurisdiction of this court has been seriously and adversely affected by the decision; that their difficulties with their passengers have been multiplied and innumerable controversies actual and potential have been brought into existence. It should be stated in this connection that this insistence is not urged by appellant as an argument or reason for its contention that the decision is wrong, but rather as a means of impressing on the court the importance of the question involved. In this connection we deem it proper to say that the court has fully recognized and appreciated the importance of such question, and has seen that hardship might result from its decision, but it seriously doubts whether the condition would be bettered by adopting appellant's contention, and making the question of the passenger's right to contract for a local or through passage depend on his secret intent and motive rather than upon the character of passage demanded.

Appellee now says in his brief for rehearing that: "It does not matter whether a man gets on the car at stop No. 9, on our Brazil Division, to ride to Indianapolis, or whether he gets on the car at Indianapolis, to ride to Chicago, if in truth and in fact he pursues his journey by one continuous, unbroken series of acts, which result in his being carried from one point to the other; by every test of definition, reason or authority he is and ought to be regarded as a through passenger." It may be that the law ought to be as stated, and that such a law or regulation would obviate many of appellant's difficulties, but such a law would ignore the question of the passenger's intent which was made prominent and controlling in the instructions which were held to be erroneous in the original opinion. We do not

348    APPELLATE COURT OF INDIANA,

Brown *v.* Terre Haute, etc., Traction Co.—63 Ind. App. 327.

question the wisdom of a law or regulation which would provide that, in cases where a railroad company, having the proper legal sanction and authority so to do, publishes and offers to the traveling public a local and a through tariff or rate, a passenger on one of such company's trains who continues his passage on the same train to his place of destination should be required to pay the through fare, regardless of what may have been his intention either before or after he entered the car, and even though he had purchased a ticket to an intermediate stop and got off the train at such stop, provided, of course, he again entered the same train and continued his passage thereon. Such a law or regulation might, and doubtless would, avoid some of the hardships which appellant suggests, and it would not be open to the criticism that it makes the passenger's right to the advantage of fares depend on his intent rather than on the contract demanded or the passage itself. Such a law or regulation, however, is a matter proper for legislative consideration, or for the consideration of the Public Utilities Commission, if the legislature has clothed it with the necessary power to make such regulations. Courts construe the law as they find it, and we find no legislative enactment and know of no law or precedent that requires, or would justify the court in holding that, where two different fares or rates are published by a railroad company, each of which have the same legal sanction and authority, the passenger may not select and contract for the character of passage which will secure to him the most advantageous rate. Every passenger has the same right, if he desires to exercise it, and where, in such a case, a railroad company permits one passenger, who so demands, to contract for through passage at a through rate, and permits another passenger, who so demands, (though his final destination may be the same as the first) to contract for local passage at the local rate, it has been guilty of no discrimination between such passengers in the absence of

legal enactment or regulation defining and limiting the character of passengers entitled to the respective rates of fare so authorized and published. In each case the passenger is given what he demands, and is charged a fare that has the sanction of the law.

We therefore overrule the petition for rehearing.

NOTE.—Reported in 110 N. E. 703, 113 N. E. 313. Carriers, discrimination of passengers between localities, as to rates of fare, 18 Ann. Cas. 149; 11 Am. St. 647. See under (3) 16 Cyc 1148.